WM. C. NEUBERT V. CHICAGO, ROCK ISLAND & GULF RAILWAY COMPANY.

No. 3955.    Decided June 22, 1927.

(296 S. W., 1090).

1.—Railways—Unused Ticket—Redemption—Interstate Commerce.

Articles 1527, 1528, 1529, Penal Code, 1911, providing for redemption by railways of unused passenger tickets or portions thereof, with penalty for refusal to do so, were not intended to apply to tickets for interstate transportation. (P. 646).

**2.—Same—Interstate Commerce Act—Construction by Interstate Commerce Commission.**

Construing the provisions of the Interstate Commerce Act in regard to contracts for interstate transportation of passengers, as interpreted and applied by the regulations of the Interstate Commerce Commission, which are to be respected by the courts unless clearly wrong, it is held that Congress, in the exercise of its right to regulate same, has occupied the field covered by Articles 1527-1529 of the Penal Code of 1911, and if these were originally applicable to tickets for interstate transportation, they are no longer valid in such application.   (Pp. 646-652).

Error to the Court of Civil Appeals for the Seventh District, in an appeal from Dallam County.

Naubert obtained writ of error on the affirmance, on his appeal, of a judgment denying him a recovery in his suit against the railway company for penalty.

*R. E. Stalcup,* for plaintiff in error cited:

Atlantic Coast Line R. R. Co. v. Georgia, 234 U. S., 280; Chicago & N. W. Ry. Co. v. Fuller, 84 U. S., 560; Hennington v. Georgia, 163 U. S., 300; M. K. & T. Ry. Co. of Texas v. Harris, 234 U. S., 412; Yazoo & M. V. R. R. Co. v. Jackson, 226 U. S., 216; Seaboard Airline R. Co. v. Seegers, 207 U. S., 75; Welton v. Missouri, 91 U. S., 275; The Hepburn Act and Carmack Amendments, Compiled Stats., U. S.; Interstate Commerce Acts; Barnes Fed. Code, 1919, Title LXI, Arts. 7884-7895; Barnes Supp. 1921, Title LXI, Arts. 7884-7895; Penal Code of Texas, 1911, Arts. 1527-28-29; Neville v. G. C. & S. F. Ry. Co., 244 S. W., 980.

*N. H. Lassiter* and *Tatum & Strong,* for defendant in error, cited: Missouri, K. & T. Ry. Co. of Texas v. Fookes, 40 S. W., 858.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

Plaintiff in error in his application for writ of ˙error stated the case as follows:

"Petitioner further shows that this is a suit which originated in the District Court of Dallam County, Texas, wherein the plaintiff in error sought to recover from defendant in error the sum of $4.33, being the amount paid by plaintiff in error to the defendant in error for a railway ticket, which was duly presented by plaintiff in error to defendant in error, for redemption, and which defendant in error refused to redeem.  Suit was for the amount paid for the ticket, together with the sum of $500.00 as statutory penalty, provided in Articles 1527, 1528 and 1529, Penal Code of the State of Texas, 1911."

To this we will add that the ticket was an interstate ticket,

purchased at Dalhart, Texas, for transportation from Dalhart, Texas, to Tucumcari, New Mexico. The only question involved in this court, under the single assignment of error in the application, is whether or not Articles 1527, 1528, and 1529 of the Penal Code (1911) are applicable; and if so, whether or not valid.

Articles 1527 and 1529 read as follows:

Art. 1527. "It shall be the duty of all railroad companies in this state, or the receiver or trustee of any such railroad company, to provide for the redemption from the holder thereof, of the whole, or any parts or coupons of any ticket or tickets which they, or any of their duly authorized agents, may have sold, if for any reason the holder has not used, and does not desire to use the same, upon the following terms: If neither the ticket, nor any part thereof, has been used by the holder, he shall be entitled to receive the full amount he paid therefor; and, where the ticket has been used in part, the holder thereof shall be entitled to receive the remainder of the price paid for the whole ticket, after deducting therefrom the tariff rate between the points for which the portion of said ticket was actually used."

Art. 1529. "Any railroad company, or receiver, or trustee of such railroad company, over or on which said ticket may be used, which shall refuse or fail to redeem the whole, or any part or coupon of any ticket or tickets, when presented, shall forfeit to the holder thereof a sum not less than one hundred dollars nor more than five hundred dollars, recoverable in any court of competent jurisdiction."

Article 1528 relates to the time in which the unused ticket must be presented for redemption, and is not here involved, except as related to the statutes quoted.

The suit was for the price of the ticket and the penalty, as provided for in the two Articles of the Code copied above. These Articles do not in express terms extend to interstate commerce, and we do not believe they were ever intended to cover tickets purchased for other than intrastate transportation; or if they were intended to have that application, they are now no longer to be applied to interstate commerce, for the reason that Congress, under its constitutional power to regulate commerce, has by its statutes, and through the agency of the Interstate Commerce Commission, occupied the field. The Interstate Commerce Act of course applied to both passenger and freight transportation. Roberts Fed. Liability Carriers, Vol. 1, Sec. 235.

Section 4 of Article 7884, Barnes' Federal Code 1919-1924

Cumulative Supplement, being the Act to regulate commerce, in part provides:

"It shall be the duty of every common carrier subject to this Act engaged in the transportation of passengers or property to provide and furnish such transportation upon reasonable request therefor, and to establish through routes and just and reasonable rates, fares, and charges applicable thereto." * * *

Section 5 declares that all charges for services rendered, or to be rendered, in the transportation of passengers or property, or in connection therewith, "shall be just and reasonable, and every unjust and unreasonable charge for such service or any part thereof is prohibited and declared to be unlawful."

This provision appears in various forms in a number of sections of the Act, and is, of course, familiar to all.

Article 7885 (Barnes Code, supra,) provides that if any carrier shall directly or indirectly, by any special rate, rebate, drawback, or other device, charge, demand, collect, or receive from any person, or persons, a greater or less compensation for any service to be rendered in the transportation of passengers or property, etc., it shall be guilty of unjust discrimination, which is prohibited.

Article 7890 by its terms requires every carrier to file with the Interstate Commerce Commission, and print and keep open to public inspection. schedules showing all rates, fares, and charges for transportation.

Section 3 of this Article prohibits any change in the rates, fares, and charges filed and published in compliance with the requirements above named, except on notice to the Interstate Commerce Commission. In this connection, the Commission is authorized to make suitable rules and regulations for the simplification of schedules of rates, fares, and charges.

Section 7 of this Article prohibits a carrier from engaging in the transportation of passenger or property unless the previous requirements as to filing and publication of rates and fares and charges have been complied with. This section expressly prohibits a carrier from making any *"refund"* to any shipper or person, *except such as are specified in such tariffs."* (Italics ours).

Section 10 of this Article prescribes a penalty for a violation of any of its terms, including those to which we referred.

Section 4 of Article 7902 in part provides that whenever the Interstate Commerce Commission, upon investigation after a full hearing, finds that any rate, fare, charge, classification, regulation, or practice, causes any undue or unreasonable charge,

preference, or prejudice as between persons or localities in intra-state commerce on the one hand, or interstate or foreign com-merce on the other, or causes any undue, unreasonable, or unjust discrimination against interstate commerce, then it shall be the *duty of the Commission to prescribe the rate, fare, or charge thereafter to be charged, and "the classification, regulation, or practice thereafter to be observed."*

Section 3 of this Article authorizes the Commission, when it deems it necessary or desirable, after hearing, to establish upon its own initiative, without complaint, through routes, joint rates, etc., applicable to the transportation of passengers or property.

We think it plainly appears from those Sections and Articles of the Federal Statutes quoted, as well as from many other pro-visions which space does not permit us to directly refer to, that the whole subject matter of prescribing rates and fares for inter-state passenger transportation, and rules, regulations, and prac-tice with reference thereto, has been confided to the Interstate Commerce Commission. It is difficult to see how language hav-ing that general purpose could be more explicit than that con-tained in some of the Sections referred to.

A provision for the redemption of an unused railroad ticket, or partially unused ticket, is necessarily either a part of the con-tract between the carrier and the passenger, or because of the existence of a valid law to that effect is read into the contract. The Interstate Commerce Act plainly authorizes the railroad companies either to fix their own fares for transportation, in-cluding the terms of the contract, together with the rules and regulations governing such contract, and to file and publish them, or requires the carrier to file and publish such fares, rules and regulations and terms of the contract as may be prescribed by the Interstate Commerce Commission.

It is perfectly plain from the Federal Statutes that a railroad company, in preparing its fare or rate structure, would have the authority to declare that it would redeem unused passenger tickets, or partially used tickets. It is equally clear that such an inclusion in its tariffs is just as much within its power and authority as is the basic requirement of the statute that it shall prepare the schedule of rates and fares, rules and regulations, and file and publish them. It is quite true that a carrier could not file, publish, and put into operation an unreasonable, unjust, or discriminatory rate, rule, or practice. That is forbidden by the Federal Statutes. Moreover, whatever rate, fare, or charge, and all rules and regulations, which it may file with reference to the subject, are plainly within the power of review and revi-

sion conferred upon the Interstate Commerce Commission. In view of the Federal Statutes, we do not think there is any field for legislation on the part of the State with reference to the redemption of unused or partially unused passenger tickets. If Texas has the right to say that a railroad company shall redeem at full cost unused passenger tickets, or partially used tickets at a proportionate part of the cost, then by the same token, and upon the same authority, every other one of the States of the Union would have the right to prescribe a rule of its own relative to the subject, and these rules might of course, by the barest accident, be the same, but could be, and most likely would be, different. The result would be that an unused interstate ticket purchased in Texas would be redeemable at full cost, while in adjoining States, or every other State, it might be redeemable at half cost, or not redeemable at all. Since the carrier must file its rates and fares, and rules and regulations governing them, with the Interstate Commerce Commission, and publish them, the result would be that it would be compelled to publish the rules and regulations as to the redemption of unused tickets, not as the carrier itself had prescribed them, but as the several States of the Union had prescribed them for the carrier. This would be plainly the making of rates and fares, and rules and regulations governing them, by the several States of the Union, and not by the carriers, as required by the statute, under the supervision of and subject to review by the Interstate Commerce Commission. The statute contemplates that the carrier shall be responsible for what it puts in its own rates, fares, rules, and regulations, makes it responsible therefor, and punishes it for its discrimination therein. To illustrate: If a carrier in Texas should file a schedule of rates and fares, and regulations and practices governing them, from Austin, Texas, to Oklahoma City, and under the Texas statute, if applicable, provide that the unused ticket, or unused portion of it, should be redeemable at full cost, the same railroad would be required, if there existed in Oklahoma the same type of statute, to file a like schedule showing that unused passenger tickets from Oklahoma City to Austin should be redeemable at, say, half the original cost, or whatever the supposed Oklahoma statute might provide. Clearly such a schedule and regulation would be discriminatory, though based on State laws. To state the case and thus apply it is to show plainly that the carrier filing any such contrariety of rules and regulations governing the redemption of tickets would be guilty of unjust discrimination, which

is within the power of the Interstate Commerce Commission to investigate and remove.

That the whole subject of passenger fares and rates, and rules and practices governing them in interstate commerce, has been confided to the Interstate Commerce Commission, is shown by the administration of the law by that body. For instance, the control of the Commission over the issuance of mileage, excursion, and commutation of passenger tickets has been established, although there is nothing in the Commerce Act that would prevent the issuance of these types of tickets. Roberts Federal Liability of Carriers, Vol. 1, Sec. 240.

The Commission has taken jurisdiction of "party rate tickets." Roberts Federal Liability of Carriers, Vol. 1, Secs. 241 to 244.

A contract of interstate transportation cannot be controlled by a State law making an interstate ticket binding for six years, and giving a stop-over privilege. Such a statute is void, as is a law requiring carriers to give shippers of livestock free transportation in interstate commerce. Watkins on Shippers & Carriers (3d Ed.), Vol. 1, Sec. 37, p. 223; L. & N. R. Co. v. Bitterman, 144 Fed., 35, 207 U. S., 205.

Mr. Watkins in his work, speaking with reference to mileage tickets, which on principle do not differ from the type of ticket before us, says:

"No room is left, if there ever were such, for the states to regulate or require the issuance of mileage tickets for interstate transportation. The Interstate Commerce Commission has held that, as to interstate transportation of passengers, 'the issuance of mileage books is voluntary,' but if they are issued there must be no discrimination, although the carriers may 'attach to the contract such lawful conditions as it chooses.'"

For the action of the Commission on this subject see 18 I. C. C., 60, 63, 64; 28 I. C. C., 318.

The subject of the redemption of unused or partially unused tickets in interstate commerce has repeatedly been before the Interstate Commerce Commission, and that body has always taken jurisdiction of the subject matter, and made many rulings thereon. See Conference Rulings of the Interstate Commerce Commission Nos. 44, 60, 76, 115, 116, 125, 163, 167, 228, 238, 247, 265, 266, 303, 380, 393, 458, 492, 495. These Conference Rulings are shown in Watkins on Shippers & Carriers, supra, Vol. 1, pages 625 to 790.

The Conference Rulings cited are precisely in point, many of them presenting facts exactly like those involved in this case.

There is no room for doubt that the Interstate Commerce Commission has assumed jurisdiction of the subject of redemption of unused or partially unused passenger tickets in interstate commerce.

It is thus seen that the executive branch of the government, having in hand the administration of the Interstate Commerce Act, has construed the law as confiding to the Commission the subject of the redemption of unused or partially unused passenger tickets issued in interstate commerce.  An examination of the Conference Rulings cited will likewise show that the redemption feature was sometimes embraced in the tariffs, rules, and regulations published and filed by the carrier, as prescribed in the Interstate Commerce Act, and that the Commission has recognized this right and approved the redemptions specified. See Conference Ruling No. 380, Watkins on Shippers & Carriers, supra, page 753.

It is an elementary rule that the contemporaneous and practical construction of a statute by those whose duty it is to carry it into effect is entitled to great respect in the courts.  Though no absolutely controlling, it is not to be disregarded without the most cogent and persuasive reasons.  Ency. of U. S. Reports, Vol. 11, p. 138.  This rule has been applied to the Interstate Commerce Act.  Texas, etc. R. Co. v. Abilene Cotton Oil Co., 204 U. S., 426. The rule announced is one generally followed throughout the country, and is adhered to by this Court. 25 Ruling Case Law, p. 1043, Sec. 274; Edwards v. James, 7 Texas, 372; G. H. & S. A. Ry. Co. v. State, 81 Texas, 572; Chambers v. Robison, 107 Texas, 315; Moorman v. Terrell, 109 Texas, 173; Coy v. Schneider, 110 Texas, 369.

Applying the rule to the Interstate Commerce Act, the uniform construction given thereto by the Interstate Commerce Commission leaves no room for doubt but that the subject of the redemption of unused or partially unused railroad tickets, issued in interstate commerce, is within the Interstate Commerce Act, and subject to regulation and administration by the Interstate Commerce Commission.

In addition to what has been said, we direct attention to the fact that this identical question has once been before the courts of this State.  In the case of M. K. & T. Ry. Co. v. Fookes, 40 S. W., 858, a ticket had been issued in interstate commerce. The suit was for the redemption of the ticket, and penalty provided by the statutes, involved in the instant case.  On the appeal of the case to the Court of Civil Appeals at Fort Worth, that court denied recovery, and in an opinion by Associate Justice Hunter

held that the statutes now before us had no application to tickets issued in interstate commerce, and that the subject of redemption of unused interstate tickets had been legislated upon by Congress, and its regulation confided to the Interstate Commerce Commission.

The case of Gulf C. & S. F. Ry. Co. v. Gray, 87 Texas, 314, is plainly in point, in that the rule which we here announce with reference to interstate passenger tickets was there announced with reference to our State penalty statutes governing freight shipments. See also Jester v. Lancaster, 266 S. W., 1103 (writ refused); McConnell v. Payne, 262 S. W., 72 (Commission of Appeals).

We are of opinion, therefore, that the statutes quoted in the beginning of this opinion have no application to interstate commerce, but that they were intended to apply, and do apply, only to intrastate commerce. As applicable to intrastate commerce, they are plainly within the legislative power of the State, and the requirement that the carrier shall redeem unused intrastate tickets, or unused portions thereof, is reasonable. Watkins on Shippers & Carriers (3d Ed.), Vol. 1, Sec. 37; Railway Co. v. Fookes, supra.

It follows from the foregoing that the judgments of the Court of Civil Appeals and the District Court, in so far as our powers of revision have been invoked by the application, are correct. Both judgments are accordingly affirmed.