## STATE v. FOX et al.
### No. 8823.

Court of Civil Appeals of Texas. Austin.
Nov. 8, 1939.

Rehearing Denied Nov. 29, 1939.

Gerald C. Mann, Atty. Gen., and George W. Barcus, Asst. Atty. Gen., for appellant.

Geo. E. Shelley, of Austin, A. D. Dyess, of Houston, and West & Hightower, of Brownsville, for appellees.

BLAIR, Justice.

Appellant, the State of Texas, sued appellees, James J. Fox, Tax Collector of Cameron County, and the American Surety Company, as surety on his official bond, for $44,990.14, being a part of the ad valorem, poll, occupation, and automobile taxes collected by appellee Fox for the months of January and February, 1932. Appellee Fox deposited the taxes as collected in the Merchants National Bank of Brownsville, the county depository, which became insolvent before Fox's checks remitting the taxes to the State Treasurer were presented and payment refused. The total amount of the taxes collected and deposited in the depository bank for the two months was $97,181.79, but that amount was reduced by dividends of the receiver of the depository bank to $44,990.14; for which amount the State sought judgment, and from an adverse judgment denying any recovery has appealed to this court.

The State predicated its right of recovery upon its construction of Art. 7260, Vernon's Ann.Civ.St., as being mandatory and requiring that appellee Fox report and remit the taxes collected for the months of January and February, 1932, on or before February 25, 1932, and March 1, 1932, respectively; and the State also alleged that appellee Fox was negligent in not making his remittances on or before said dates. The material portions of the stat-ute relied upon by the State read as follows:

"1. At the end of each month the Tax Collector shall, on forms to be furnished by the Comptroller, make an itemized report under oath to the Comptroller, showing each and every item of ad valorem, poll and occupation taxes collected by him during said month, accompanied by a summarized statement showing full disposition of all State taxes collected, provided that said itemized reports for the months of December and January of each year may not be made for twenty-five (25) days after the end of such months if same cannot be completed by the end of such respective months.

"2. He shall present such report, together with the tax receipt stubs to the County Clerk, who shall within two (2) days compare said report with said stubs, and if same agree in every particular as regards names, dates and amounts, he shall certify to its correctness * * *.

"3. The Tax Collector shall then immediately forward his reports so certified to the Comptroller, and shall pay over to the State Treasurer all moneys collected by him for the State during said month * * *. The Tax Collector may, in making remittance of funds to the State Treasurer or any other State officer, board, commission or employe of the State, make the same by sending cash or a check on the county depository, if the funds are in the county depository, or if the same, in due course, are required to be in such depository. * * * If such funds are sent in cash, by registered letter, by Post Office Money Order, express money order or by bank draft or bank check or depository check, in such event the liability of the persons sending the same shall not cease until the same money is actually received by the State Treasurer or the duly authorized State depository or other authorized officer in due course of business."

The report required by the statutes of the taxes collected for the months of January and February, 1932, respectively, was each dated March 16, 1932, and both were forwarded by appellee Fox to the State Comptroller and were received and filed by him on March 21st and March 22, 1932, respectively.

Appellee Fox mailed his two checks, each dated March 16, 1932, drawn on the depository bank for the full amount of the taxes due the State for January and Feb-

ruary, 1932, respectively, which checks were received by the State Treasurer, and on March 18, 1932, deposited by him in regular banking channels for collection, and were presented to the depository bank in due course for payment prior to March 24, 1932, and payment was refused, with the following notice appended to each check:

"This bank has until further notice declared a moratorium under the terms of which withdrawals of deposits are limited in amounts. This check exceeds that limit.
"Merchants National Bank,
"Brownsville, Texas."

This moratorium was established by the resolution of the board of directors of the depository bank on March 10, 1932, and it was placed in the hands of a receiver on March 24, 1932.

The trial court, trying the case without a jury, sustained the several pleas or defenses of appellees as follows:

1. That the statute quoted was not mandatory but directory with respect to the time of making remittances of the taxes in question to the State Treasurer by appellee Fox.

2. That appellee Fox was not negligent in failing to make remittances of the taxes on February 25, 1932, and March 1, 1932: (1) Because it was physically impossible for him to have done so with the help furnished; and (2) because if he had made such remittances on February 25, 1932, or on any date thereafter the checks drawn on the depository bank would not have been paid by it because of insolvency.

3. That the sole proximate cause of the loss of the taxes by the State was the insolvency of the depository bank and/or the establishment by it of the moratorium referred to.

4. That if the checks for the remittances of the taxes had been presented and paid by the depository bank on February 25, 1932, or any date thereafter, such payment would have constituted a preference to the State in violation of the National Banking Act; because at all such times the depository was in fact insolvent.

The controlling question presented is whether the provisions of Sec. 1 of Art. 7260 are mandatory and required appellee Tax Collector to remit the taxes collected during the months of January and February, 1932, respectively, not later than February 25th and March 1, 1932, respectively. We have reached the conclusion that the trial court correctly construed the statute as being directory.

■ The general rule relating to the construction of statutory law prescribing the time for the performance of the duties of public officials is well stated in 46 C.J. 1037, § 306, as follows: "As a rule a statute prescribing the time within which public officers are required to perform an official act is merely directory, unless it denies the exercise of the power after such time or the nature of the act or the statutory remedy shows that the time was intended as a limitation."

Mr. Sutherland, at page 1117, § 612, of his book on Statutory Construction, also states the rule to be as follows: "Provisions regulating the duties of public officers and specifying the time for their performance are in that regard generally directory. Though a statute directs a thing to be done at a particular time, it does not necessarily follow that it may not be done afterwards. In other words, as the cases universally hold, a statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others is directory, unless the nature of the act to be performed, or the phraseology of the statute, is such that the designation of time must be considered as a limitation of the power of the officer."

■ Again this same author observes, in § 611, p. 1114: "Those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly and prompt conduct of the business, and by the failure to obey the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and if the act is performed, but not in the time or in the precise mode indicated, it will still be sufficient, if that which is done accomplishes the substantial purpose of the statute."

This language of Mr. Sutherland was quoted with approval by the Commission of Appeals in the case of Federal Crude Oil Co. v. Yount-Lee Oil Co., 122 Tex. 21, 52 S.W.2d 56, opinion expressly approved by the Supreme Court, and wherein the court held that revenue statutes are to be liberally construed to effectuate their purpose to collect money for the support of the government; that ordinarily the time prescribed in revenue statutes for the collection is not the essence of the thing sought to be accomplished; and that such statutes prescribing the time in which public

officers shall perform their duties in collecting revenues are generally deemed to be directory.

 To the same effect are the following cases relating to construction of statutes as being mandatory or directory: Ferris Press Brick Co. v. Hawkins, 53 Tex.Civ.App. 578, 116 S.W. 80; City of Uvalde v. Burney, Tex.Civ.App., 145 S.W. 311; Huffman v. Wilkes,. 143 Kan. 458, 55 P.2d 366; Freels v. Walker, 120 Tex. 291, 26 S.W.2d 627; Bickle v. City of Panhandle, etc., 43 S.W.2d 640, 641; and Smith v. Morton Independent School Dist., 85 S.W.2d 853, 858; and Gayle v. Alexander, Tex.Civ. App., 75 S.W.2d 706, wherein the "mandatory provision" of a statute is defined as being one, the omission of which under the proceeding to which the provision relates is illegal and void; and a "directory provision" is defined as being one, the observance of which is not necessary to the validity of the proceeding; and wherein it was further held that in determining whether the provision in a statute is mandatory or directory, the legislative intent as ascertained from consideration of the entire statute, and its nature, its object, and consequences that would result from both constructions, should be considered.

 When the foregoing rules of statutory construction are applied to Art. 7260, it is obvious that the legislature intended it as a directory statute with respect to the time of making reports and remittances of state taxes by tax collectors. The statute is a taxation and revenue statute. It contains no language of prohibition for filing the reports or making the remittances in question after the dates named in the statutes. And as was held in Federal Crude Oil Co. v. Yount-Lee Oil Co., supra [122 Tex. 21, 52 S.W.2d 61], since the statute is a revenue statute it should be "liberally construed so as to effectuate the chief object and purpose of [its] enactment;" and that "in making provision for the collection of * * * revenue, ordinarily time is not of the essence of the thing sought to be accomplished." Under this rule, a manifest reason for the fixing of the time for making the report and remittance of the taxes collected was for the purpose of securing the proper, orderly, and prompt conduct of the business; and the statute is directory in respect to time.

Appellees insist that a further reason for construing the statute as to time for making the report and remittance of the state taxes as being directory, is the fact that the state's executive officers, the Comptroller and Treasurer, who are charged with the duty of enforcing the statute, ·have continuously so construed it. They show in this connection that the reports and remittances of the state tax have not been made for any year since the enactment of the statute at the time stated in Sec. 1 thereof by appellee; and that his reports and remittances have always been received by said executive officers; and that the Comptroller has by several letters commended appellee for his promptness, even though for each of the years 1927 to 1930, both inclusive, his reports and remittances were made at later dates than the ones in question for the 1931 taxes. Appellees also showed that the same procedure had been applied to other large taxpaying counties, because from the beginning these executive officers found that delays incurred in making such reports and remittances necessarily arose because of the shortness of the time allowed. Appellees also sought to show and to contend that the statute in question was ambiguous, indefinite, confusing, and in conflict with the same or other acts of the legislature, which are in pari materia with respect to the time for making reports and remittances of county, school district, and irrigation district taxes by the same collector, and the time of making final adjustments, and the different modes or manner of remedies which collectors were given under the statutes as to time of making reports and remittances of taxes. Arts. 7260, 7262 and 7294, Revised Statutes, Vernon's Ann.Civ.St. arts. 7260, 7262, 7294.

 Having shown these facts and circumstances, and claimed conflicting statutes, appellees insist upon the application of the settled rule that executive or departmental construction of a revenue statute for a long period of time is entitled to be given weight by the courts, and particularly where the statute is one of doubtful meaning. Neubert v. Chicago, R. I. & G. R. Co., 116 Tex. 644, 296 S.W. 1090, 53 A.L.R. 1224; Whittenberg v. Craven, Tex. Com.App., 258 S.W. 152; Freels v. Walker, 120 Tex. 291, 26 S.W.2d 627; Federal Crude Oil Co. v. Yount-Lee Oil Co., supra. We doubt if this rule is applicable in the instant case, because the statute in question is not ambiguous or of doubtful meaning; nor is it necessarily in conflict with the statutes which require the same collectors to make reports of other taxes

to other proper authorities. A reasonable classification of the different kinds of taxes collected by tax collectors, and differences with respect to the time, mode, and manner of reporting and remitting them are not for that reason alone ambiguous or of doubtful meaning; and are not necessarily in conflict either as between themselves or with respect to the remedies given the collectors of these different kinds of taxes. We prefer, as did the trial court, to base our conclusions upon the proper construction of this and all other statutes cited as being directory rather than mandatory with respect to the time of making reports and remittances of the taxes, rather than upon the rule of departmental construction of an ambiguous or doubtful statute. There is no proof whatever that the Comptroller or Treasurer had any difficulty in determining the meaning of the statute which provided that the reports and remittances be made on the dates named in the statute. They found, however, that from the beginning of the operation of the statute that delays incurred in making such reports and remittances necessarily arose because of the fact that the larger percent of taxes are paid during the latter part of the month of January, which entailed such a large amount of detail work on tax collectors that it was impossible for them to make their reports and remittances by the time named in the statutes, particularly in the larger taxpaying counties. To meet the exigencies of this situation, they simply construed the statute and determined that the provision with respect to time of making reports and remittances was directory and not mandatory. In so doing they applied the general rule of statutory construction upon which we have determined this case. That is, a statute which merely prescribes a time for an official act to be performed, is regarded as being directory, unless by its language or provisions it is shown that the legislature intended that the time was to be a limitation. No such limitation appears in the statute in question.

In further support of its contention that the provision of Sec. 1 of Art. 7260 with respect to the time of making the report and remitting the taxes is mandatory, the State cites the provision of Sec. 3 of said statute, which provides: "If such funds are sent in cash, by registered letter, by Post Office Money Order, express money order or by bank draft or bank check or depository check, in such event the liability of the persons sending the same shall not cease until the same money is actually received by the State Treasurer or the duly authorized State depository or other authorized officer in due course of business."

We do not regard this provision of the statute as material to the case of the State, which is predicated solely upon the failure of appellee to transmit the taxes which were admittedly in the depository bank to the Treasurer not later than February 25, 1932, or February 27, 1932, allowing the clerk time to examine the report and approve it. We construe this provision of the statute as being intended solely to protect the state funds during transmission from the depository bank to the State Treasurer. That is, if the collector had taken the cash out of the depository bank for transmission to the Treasurer, or if he had attempted to transfer the funds by registered letter, money order, express money order, bank check, etc., the liability of the collector and his bondsmen would continue until the money so transmitted is actually received by the Treasurer. Appellee made no such transmission of the funds, but mailed his check, drawn on the depository bank in favor of the State Treasurer, which method of remittance is specifically authorized by the statute. And it may be here observed that the State did not in any manner predicate its claim of liability upon the ground that appellee Fox was negligent in any manner with respect to the method used by him in attempting to transmit the taxes from the depository bank to the State Treasurer, because the statute specifically authorized him to make remittance of the taxes "by sending * * * a check on the county depository," which he did. The Treasurer received the checks for the taxes and placed them in proper banking channels for collection; but payment was refused because of the insolvency of the bank. If the bank had been solvent, the checks would have been paid and no claim of liability against appellees could have existed even though the checks were sent at a later date than prescribed in Sec. 1 of the statute. Having held that this statute was not mandatory but directory as to time of making the remittance, the only question left in the case is whether appellee Fox was negligent in failing to make his remittance before the date he made it, or at any time prior to the time the depository bank became insolvent; and to which question we now pass.

The evidence fully sustains the finding of the trial court that appellee Fox was not negligent in failing to make his report and remittance, and that he could not have made such remittance of the taxes prior to March 16, 1932, the date on which he mailed his check drawn on the depository bank for the taxes, because it was physically impossible for him to have done so with the facilities and help furnished him by the Commissioners Court of Cameron County. The evidence on this issue is not controverted, and no useful purpose would be served by detailing it. Suffice it to say that it was shown that 80% of the taxes for Cameron County were paid during the month of January, 1932; that the Tax Collector was charged with the collection of state, county, navigation district, school district, poll taxes, automobile licenses, and other taxes which it was his duty to separate and report, and remit same to the authorities to whom it was due under the statute. It was shown that subdivisions into small tracts of land by the owners, such as town lots, required a large number of new receipts each year; that 40% of the taxpayers of Cameron County were non-residents, and their taxes were paid by remittances through the mail, which took time to collect and deposit in the depository. The evidence is undisputed that there were more than 18,000 entries made in connection with the collection of the taxes in question, and the report thereof to the State Treasurer. Appellee was furnished a stenographer who operated a combination typewriter and tabulation machine, and one chief deputy, and several other special employes, all of whom worked during the regular office hours, and for several weeks during the time in question all of said employes worked late at night, in an effort to prepare such report and remit the taxes as soon as possible. The County allowed compensation for the extra hours of work by the employes, but did not furnish sufficient help to complete it at an earlier date than it was completed. Both the Tax Collector and his chief deputy were skilled in their work from long years of experience, and both of them testified that it was impossible to make the report and remittance earlier than they were made on March 16, 1932. The record shows that the report and remittance were made earlier than any other report for any year made by the Tax Collector after the enactment of the present statute; and that

he received commendatory letters from the Comptroller from time to time for the manner in which he discharged the duties of his office.

When the checks dated March 16, 1932, drawn on the county depository for the taxes in question, were presented on or about March 19, 1932, the depository refused payment under the terms of the moratorium above referred to; and on March 24, 1932, the depository bank was closed by order of the federal authorities in charge of such matters. In this connection, the trial court further found that if the checks had been drawn and presented on February 25, 1932, or any date thereafter, payment would not have been made thereon because the bank was insolvent at all such times. The evidence fully sustains this finding of the trial court. Suffice it to say that the president of the bank testified that from the middle of February, 1932, until the bank closed, they had privately refused to pay but a certain percentage of large deposits; and that on March 10th they declared the moratorium above referred to; all of which was with the knowledge and consent of the federal banking authorities; that due to the depression prevailing everywhere, and to local conditions with reference to freezing of crops and vegetables, they were unable to make collections on their loans, and that only a small sum was so collected. The president testified that if the checks drawn on the depository fund by appellee had been presented on February 25, 1932, or any date thereafter, they would not have been paid, because to have done so would have required the bank to have paid other large depositors, which the bank was refusing to do, and in consequence would have caused the bank to close its doors on that date.

There is no evidence whatever that appellee knew anything of the condition of the bank or of its pending insolvency at the time he made his deposits in the bank; or at any time before he made his report and remittance. He, himself, had both individual and trust funds in the bank at the time it became insolvent.

With respect to the question of the negligence of appellee Fox in failing to make his report and remittance of the taxes before February 25, 1932, this court passed upon a somewhat analogous situation in the case of State v. Hatcher, Tex.Civ.App., 52

S.W.2d 794, 800, wherein the State Treasurer and his bondsmen were sued for damages alleged to have been sustained as the result of delay in collecting a draft of the County Treasurer to take up school bonds. He received the draft on April 10, 1926, and because of payment of millions of dollars of interest on permanent school fund bonds, and because the State furnished only one man for this work, who was unable to reach the draft for deposit and collection before May 26, 1926, on which date the county depository on which the draft was drawn became insolvent, the draft was not paid. This court held as follows: "In some detail the answers show that the volume of remittances coming to the treasurer at the time in question was so great that, with the limited assistance furnished by the Legislature, it was impossible to reach the draft in the regular order of its receipt until after May 26th. Appellant's contention is that this was not a legal excuse for failure to put the draft in due course of collection in accordance with banking customs. We overrule this contention. The treasurer could only employ such facilities as the State afforded in transacting the business of his office, and he should be held negligent only to the extent that he failed to make proper and efficient use of those facilities. The impossible should not be required of him, nor should he be required to resort to his private means in furnishing employees to transact the State's business. To this extent, at least, the customs relating to banking or commercial transactions do not apply to him."

Under the facts above stated, the finding and conclusion of the trial court that the bank was insolvent on February 25, 1932, and at all times thereafter, is sustained by both Federal and State authorities.

In Aycock v. Bradbury, 10 Cir., 77 F.2d 14, 16, the court held:

"Insolvency of a bank within the meaning of the statute is inability to meet its obligations as they accrue in the ordinary course of business. * * *

"It is settled law that a bank is in contemplation of insolvency when the fact becomes reasonably apparent to its officers that it will presently be unable to meet its obligations as they accrue and pay its creditors in full; and realization of that fact cannot be deferred by blindly indulging in hope without reasonable basis of fact."

In 6 Tex.Jur., 317, it is stated: "It is not insolvency in its popular sense that the law regulating banks and trust companies and kindred corporations deals with, but insolvency in its legal sense, which exists whenever such an institution, from any cause, is unable to pay its debts in the ordinary or usual course of business."

See also Turkey State Bank v. Estelline, etc., Tex.Com.App., 272 S.W. 775; First Natl. Bank v. Neel, Tex.Civ.App., 10 S.W. 2d 408.

There is no claim that appellee Fox was negligent in any manner after he mailed his checks for the taxes to the Treasurer on March 16, 1932, or that the checks would have been paid if presented to the depository bank after that date.

The above facts also sustain the conclusion of the trial court that the sole proximate cause of the loss of the taxes in question by the State was the insolvency of the depository bank. The evidence fully sustains the finding and conclusions of the trial court that if the checks remitting the taxes had been delivered to the State Treasurer on February 25, 1932, or February 27, 1932, and presented to the depository bank in due course of business, payment of the checks would have been refused because the bank was insolvent on such dates and ever thereafter.

We do not regard the finding and conclusion of the trial court that if the checks remitting the taxes had been presented and paid on February 25, 1932, the payment would have constituted a preference in violation of the banking laws as material to a decision in the case.

The judgment of the trial court will be affirmed.

Affirmed.