THE ATTORNEY GENERAL
OF TEXAS
ATTORNEY GENERAL


August 12, 1971

Hon. Bevington Reed
Commissioner of Higher Education
Coordinating Board
Texas College and University
  System
P. O. Box 12788
Capitol Station
Austin, Texas 78711

Dear Dr. Reed:

Opinion No. M-927

Re: Method of calculating the
    amount of funds to be in-
    cluded in determining the
    "net general revenue ap-
    propriations to the estab-
    lished public medical
    schools," pursuant to
    Article 2919e-2.1(1)(f),
    Vernon's Civil Statutes.

          Your recent letter requesting the opinion of this office
concerning the referenced matter states, in part, as follows:

          "The Coordinating Board has under consideration
    proposals to contract with Baylor College of Medicine
    and Baylor College of Dentistry as provided in Article
    2919e-2.1, Vernon's Texas Civil Statutes, and in items
    8 and 9 of the appropriations to the Coordinating
    Board, Texas College and University System, for the
    year ending August 31, 1972, as contained in Senate
    Bill No. 11, 62nd Legislature, Regular Session, 1971.
    The Coordinating Board respectfully requests your
    opinion concerning the method of calculating the rates
    of disbursement of these appropriations. Specifically,
    what amounts of funds shall be included in determining
    ' . . . the net general revenue appropriations to the
    established public medical schools . . .' as this
    phrase is used in Section 1(f) of Article 2919e-2.1,
    V.T.C.S.?"

          Apposite portions of Article 2919e-2.1, Vernon's Civil
Statutes, provide as follows:

"Section 1.  Wherever used in this Act, the respective terms shall have the indicated meaning unless context otherwise requires:

"   .  .  .

"(f)   'average annual state tax support per undergraduate medical student enrolled at the es- tablished public medical schools'-- an amount cal- culated by dividing <u>the net general revenue appro- priations to the established public medical schools</u> for the fiscal year next preceding the scholastic year of disbursement by the total number of under- graduate medical students enrolled in those schools on October 15 of said fiscal year.

"   .  .  .

"Sec. 3.A.   In the exercise of the rights, powers, and authority described in Section 2 of this Act, the Coordinating Board may disburse to Baylor College of Medicine, during each scholastic year of disbursement, an amount equal to the aver- age annual state tax support per undergraduate med- ical student at the established public medical schools multiplied by the number of bona fide Texas resident undergraduate medical students enrolled at Baylor College of Medicine; provided, however, that the Coordinating Board shall never disburse an amount exceeding the amount appropriated by the Legislature for this purpose.

"B.   Subject to the limitations described in Section 3A of this Act, the Coordinating Board is hereby granted the right, power, and authority to establish, by contract with Baylor College of Medicine, the method by which the above-described disbursement shall be accomplished, and may pre- scribe such reasonable rules and regulations as are necessary to ascertain the average annual state support per undergraduate medical student at the established public medical schools."
(Emphasis added.)

Section 4 of the foregoing Article gives the Board a similar power to contract with the Baylor University College of Dentistry. The last sentence of that Section provides that:

"For the purposes of this section The University of Texas Dental Branch at Houston shall be used to calculate the average annual state tax support per undergraduate dental student."

Article IV of Senate Bill 11, Acts of the 62nd Legislature, R.S., 1971 (General Appropriations Act for the fiscal year commencing September 1, 1971), in setting forth appropriations for the Coordinating Board, Texas College and University System, contains the following line item appropriations for the next fiscal year:

"8.    Funding for Baylor College of
       Medicine, in accordance with
       H.B. 586, Sixty-first Legis-
       lature, Regular Session, 1969      2,500,000

"9.    Funding for Baylor University
       College of Dentistry in accord-
       ance with H.B. 586, Sixty-
       first Legislature, Regular
       Session, 1969                      1,700,000"

H.B. 586, referred to in the foregoing appropriations, is now Article 2919e-2.1, Vernon's Civil Statutes, portions of which have been set forth hereinabove.

The term "net general revenue appropriations", is a term which appears in the Appropriations Bill for the appropriations to each of the established public medical schools (the University of Texas Medical Branch at Galveston and the Southwestern Medical School at Dallas) defined by Section 1(c) of Article 2919e-2.1. This term has appeared in these appropriations in all of the fiscal years relevant to the funding of the enabling legislation under consideration. The amount represented by the "net general revenue appropriations" is determined by sub-

tracting from the "grand total" of the educational[1] appropriations to the respective medical schools such other income as the schools are expected to realize. For example, line item appropriations to the University of Texas Southwestern Medical School at Dallas for the fiscal year ending August 31, 1971, aggregated a "Grand Total" of $7,906,406. The Appropriations Bill for that year (House Bill 2, Second Called Session, 61st Legislature, 1969, page IV-37) indicates that "estimated net income" of $666,300 was subtracted from this grand total, leaving a "net general revenue appropriation" of $7,240,106. The term "net general revenue appropriation" reappeared in the appropriations to these two institutions for the fiscal years ending August 31, 1969 (House Bill 5, First Called Session, 60th Legislature, 1968, pages IV-31 and IV-33), 1970 (House Bill 2, Second Called Session, 61st Legislature, 1969, pages IV-35 and IV-37), 1972 and 1973 (Senate Bill 11, Regular Session, 62nd Legislature, Pages IV-30 and IV-33).

The Legislature has consistently used the term "net general revenue appropriation" to mean the grand total of the educational[2] appropriations to the Dallas and Galveston medical schools, less other educational income realized by those institutions. Thus, when the Legislature utilized the phrase "net general revenue appropriations to the established public medical schools" in its definition of the statutory rate of disbursement to Baylor Medical School, the inescapable conclusion is that the

---

1  All of the appropriations set forth in the current appropriations bill for the University of Texas Medical School at Dallas are for educational purposes. The appropriations set forth in the current bill for the University of Texas Medical Branch at Galveston are divided into two portions: one for "educational units", the other for "hospital units." It seems clear that the Legislature intended that only the "educational unit" appropriations, and not "hospital unit" appropriations, for the Medical Branch at Galveston should be used in determining the "net general revenue appropriations" for that Branch; see the computations set forth at pages 6-7, _infra_.

2  See footnote 1, supra.

Legislature intended to incorporate by reference the above-mentioned sums appropriated to the two public medical schools. Even if a narrower interpretation of the phrase were possible, the Leaislature has declared, in Section 6 of Article 2919e-2.1, that "all of the terms and provisions of this Act are to be liberally construed to effectuate the purposes, powers, rights, functions and authorities herein set forth." To afford this phrase a liberal construction means to give it its "generally accepted meaning, to the end that the most comprehensive application thereof may be accorded, without doing violence to any of its terms." See, for example, Maryland Casualty Co. v. Smith, 40 S.W.2d 931 (Tex. Civ.App. - Dallas, 1931, no writ).

The meaning affixed to the term, "net general revenue appropriations" by the Coordinating Board in its budget requests of the 62nd Legislature, although not binding on the Attorney General or the Courts, is entitled to great weight. Moorman v. Terrell, 109 Tex. 173, 202 S.W. 727 (1918); Slocomb v. Cameron I.S.D., 116 Tex. 288, 288 S.W. 1064 (1926); Neubert v. Chicago R.I. & G.R.Y. Co., 116 Tex. 644, 296 S.W. 1090 (1927); United States v. T.I.M.E., Inc., 252 F.2d 178 (5th Cir., 1958), cert. denied, 358 U.S. 810 (1958).

In its budget request for the fiscal years ending August 31, 1972, and August 31, 1973, the Coordinating Board quoted the statutory definition of average annual state tax support for undergraduate medical students enrolled at the established public medical schools, and ascertained this amount by (1) totalling the net general revenue appropriations for educational purposes to the University of Texas Medical Branch at Galveston ($7,417,020; this figure is derived by subtracting the anticipated income from educational and general funds of $960,897 from the total of $8,377,917 appropriated for educational units, which is the total of line items 1 through 9, found in House Bill 2, Second Called Session, 61st Legislature, page IV-35) and University of Texas Southwestern Medical School at Dallas ($7,240,106) for the year ending August 31, 1971, as set out in that appropriations bill, and (2) dividing that sum ($14,657,126) by the minimum number of undergraduate medical students required

to be enrolled at the two schools (1,020) to arrive at an average annual state tax support for undergraduate medical students of $14,370. (3) It noted that 175 bona fide Texas residents were expected to enroll at Baylor Medical School in each year of the forthcoming biennium, then multiplied $14,370 by 175, and arrived at a figure of approximately $2,500,000. The Coordinating Board requested this amount for each year of the biennium, and the 62nd Legislature provided full funding of this request.

The necessary conclusion is that the Legislature accepted the Coordinating Board's interpretation of all of the elements of the phrase "average annual state tax support per undergraduate medical student enrolled at the established public medical schools", including "net general revenue appropriations."

The rate of disbursement established by Article 2919e-2.1, Vernon's Texas Civil Statutes, is clear and unequivocal. This general law utilizes the phrase "net general revenue appropriations" in its generally accepted meaning, as established by the appropriations to the University of Texas Southwestern Medical School in Dallas and the University of Texas Medical Branch in Galveston, as well as the executive interpretation of this phrase utilized in the budget request of the Coordinating Board, Texas College and University System. That the 62nd Legislature accepted the interpretation by the Coordinating Board, and fully funded the Coordinating Board's request pursuant to this interpretation, establishes beyond question the meaning which must be attached to "average annual state tax support per undergraduate medical student enrolled at the established public medical schools" as set out in Section 1(f), Article 2919e-2.1.

You are, therefore, advised that the term " . . . the net general revenue appropriated to the established public medical schools . . ." as this phrase is used in Section 1(f) of Article 2919e-2.1, Vernon's Texas Civil Statutes, means the "Grand Total" of appropriations to the University of Texas Southwestern Medical School at Dallas and the University of Texas Medical Branch at Galveston, less such other income as may be realized by these schools from educational sources.

S U M M A R Y

The term " . . . the net general revenue appropriated to the established public medical schools . . ." as this phrase is used in Section 1(f) of Article 2919e-2.1, Vernon's Texas Civil Statutes, means the "Grand Total" of appropriations to the University of Texas Southwestern Medical School at Dallas and the University of Texas Medical Branch at Galveston, less such other income as may be realized by these schools from educational sources.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Austin C. Bray, Jr.
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

James McCoy
Scott Garrison
Fisher Tyler
James Quick

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant