S. H. HUGGINS v. J. T. ROBISON, COMMISSIONER OF GENERAL LAND OFFICE, ET AL.

No. 4825. Decided November 21, 1928.

(10 S. W., 2d Series, 710.)

*Umphres, Mood & Clayton,* for relator.

A proper construction of the present law is that a forfeiture can be taken only after the land has been classified and valued by the Commissioner and advertised for sale on a future sale date provided past due interest should not be paid. We believe it is reasonable to suppose that the Legislature intended to make some change relative to the forfeiture of lands, for otherwise there would have been no necessity of inserting the few additional words that were inserted in the present law. It is possible that the Legislature intended to make it more difficult to enter forfeitures.

It may be that the Act of 1925 above referred to so involves the power of the Commissioner with reference to forfeitures as to make it very difficult for the Commissioner to forfeit land for non-payment of interest, but forfeitures are not generally favored in law, and it is usually held that when some act must be done by one party before declaring forfeiture against another party, even though such act would ordinarily be unimportant, yet, forfeitures not being favored, the law requies a performance of the requisite act.

It is our construction of the law that the Commissioner is now required to describe the land as when offering it for sale and to advertise the fact that the interest is delinquent and that it will be both forfeited and sold on some sale date thereafter if past due interest should not be paid, the advertisement stating that the particular land subject to forfeiture will be forfeited and that it and other unsold

land will be sold on some particular sale date if past due interest should not be paid.

It will be observed that the land was not forfeited on September 1st, and it was not forfeited on any other sale date. Sales dates were September 1st, May 1st and January 1st, whereas the land in this instance was forfeited on September 22nd. It is relator's contention that the Commissioner's power to forfeit is limited to a sales date.

*Claude Pollard,* Attorney-General, and *C. W. Truehart,* Assistant, for respondent Robison.

*Wm. Blakeslee,* for respondent Carter.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

The pleadings in this case and the records of the General Land Office show the following:

"That S. H. Huggins filed application with the surveyor of Armstrong county 23rd August 1914, for a survey of public domain under the act of 23rd February 1900, as amended in 1905 and 1907, which application, together with the field notes, was filed in this office 22nd September 1914, covering 96.3 acres, known as survey 82, block HD SF 11182 Donley county;

"That corrected field notes of said section 82 were filed in this office 11th November 1914, and approved for 111 acres, which claim was classified as grazing and appraised at $2.00 per and awarded S. H. Huggins on said classification and appraisement, 8th January 1915, on his application filed in this office 26th December 1914, without condition of settlement, which sale was forfeited for non-payment of interest 22nd September 1925, and the file wrapper endorsed 'Land forfeited, 22nd September 1925, J. H. Walker, Acting Commissioner' of which forfeiture the county clerk of said county was advised 24th September 1925;

"That mineral permit 10792 was issued 4th May 1926, to Theo. W. Carter on his application filed with the county clerk said county 11th February 1926, at 8:00 A.M., to prospect for oil and gas in said section 82, which application, together with the required affidavit, payment and fees, was filed in this office 11th March 1926, and said permit 10792, containing said section 82, 111 acres, stands on the records of this office in the name of Theo. W. Carter;

"That the firm of Eckhart & Turpen, by R. M. Turpen, deposited in this office 29th April 1926, a check for $42.53, for the purpose

of paying the interest to date and reinstatement of said section 82 in the name of S. H. Huggins, which check was transmitted to the Treasurer 4th May, 1926, for collection and deposit to the credit of the proper fund;

"That this Department instructed the refund of this amount 6th May 1926, for the reason the land had been forfeited, and the amount could not be applied."

The relator prays judgment of this court compelling and requiring the Commissioner of the General Land Office to cancel the mineral permit issued to Theo. W. Carter, and to either rescind the forfeiture endorsement on the wrapper pertaining to this land, or to re-instate said land, upon relator paying all past due interest, fees, and penalties.

It is the contention of relator that under Article 5311 of the Revised Civil Statutes of Texas, 1925 (formerly Article 5408), that the giving by the Commissioner of the General Land Office of notice by wide publicity and general information as to forfeiture and the time and terms of resale, referred to under Article 5311, is a prerequisite of the exercise of the power of forfeiture by the Commissioner as against relator, and that such notice is essential to the validity of the intervening rights of the mineral permittee.

On the other hand, it is the contention of the Commissioner that relator is not entitled to a re-instatement or a rescission of the forfeiture endorsement because the prior rights of the respondent Carter, as mineral permittee, had intervened, and that the giving by the Commissioner of notice by wide publicity and general information as to forfeiture and the time and terms of resale referred to in said Article 5311, is not a prerequisite of the exercise of the power of forfeiture as against relator, nor is such notice essential to the validity of the intervening rights of the mineral permittee.

We are in accord with the latter construction.

It is admitted that the Land Commissioner mailed notice of forfeiture to the county clerk on September 24, 1925, after entering the forfeiture on September 22, 1925, and that the Commissioner in all things complied with Chapter 94 of the General Laws of the 39th Legislature, known as the Relief Act, and that the relator did not attempt to in any way comply with said act.

A decision of the issues of this case must turn on a proper construction and interpretation of Article 5311, Revised Civil Statutes of 1925, which reads as follows:

"In cases where any land included in this Act may be leased and the same may come on the market by reason of the expiration or

. cancellation of such leases and in cases where land may be sold and become subject to forfeiture or cancellation for non-payment of interest and thereby subject to revert to the fund to which it originally belonged by reason of the forfeiture or cancellation of the sale, it shall be the duty of the Commissioner to classify and value same before some sale date thereafter and adopt such means as may be at his command that will give wide publicity and general information as to when such land will be forfeited or cancelled, and when it and other land will be on the market for sale together with the regulations, terms and conditions upon which the land may be purchased if past due interest should not be paid. No tract of land shall be subject to sale, except unsurveyed school land, until it shall have been advertised. If there are no other satisfactory or sufficient means at the command of the Commissioner that will give the necessary publicity he shall have printed at the expense of the State, to be paid out of the appropriation for public printing, lists of the land for free distribution to the public. The list shall contain a brief statement of how one shall proceed to buy the land and also state the year to which delinquent interest must be paid to prevent a forfeiture and cancellation. No corporation shall buy any land under this Act."

We think that a careful examination of Article 5311, (formerly old Article 5408, amended and changed) will disclose that said article has no application to the rights of the owner of land subject to forfeiture or which has been actually forfeited, and therefore has no bearing on this case whatever. This article clearly has reference to the manner of putting on the market for sale to the public, lands which are subject to forfeiture, and declares the duty of the Commissioner with reference to such land, first, to classify and value the same before some sale day, and, second, to give, *for the benefit of the state and the purchasing public, wide publicity and general information* as to when such lands will be forfeited and when same will be on the market for sale, and the terms upon which the land may be purchased, if past due interest should not be paid. There is absolutely no reason, under the very wording of the statute, to suppose that the things named in Article 5311 to be done by the Commissioner are intended for the benefit of the defaulting owner or to make a forfeiture more difficult, or to be prerequisite of the power of the Commissioner to enter the forfeiture. The owner of the land, as a matter of law, knows the time when his interest is due, and he knows that his land is subject to forfeiture in case he fails to pay his interest at the time provided for by law. There could be no good

reason given for the Legislature to require the Commissioner *"to classify and value same before some sale day thereafter and adopt such means as may be at his command that will give wide publicity and general information as to when such land will be forfeited or cancelled, and when it and other lands will be on the market for sale,"* etc., in so far as the owner is concerned. Such requirements could be of no benefit to the owner, as he knows, as before stated, as a matter of law, when his interest is due, and the amount thereof, and the penalties for failure to pay. Such a construction would be to hold that the Legislature had in mind to hamper and make difficult the forfeiture of lands for default in interest payments, when the things required would not benefit the owner, except in so far as it hampers the Commissioner.

The very evident purpose of the law is to facilitate sales of such lands by giving as much advance information as possible on the lands subject to forfeiture; and it is plainly recognized by the very terms of the law that the forfeited lands are not to be actually put upon the market for sale until after forfeiture. The general public is to be notified that such lands will be on the market for sale, and is given the benefit of the terms on which the lands may be sold if past due interest be not paid. This is clearly shown by the fact that the statute says, *"and when it and other land will be on the market for sale,"* etc. Certainly the owner is not interested in *other land,* and yet, the statute provides that he shall give, *"wide publicity and general information * * * when it and other lands shall be on the market for sale."* Certainly the owner would have no interest in the *wide publicity and general information* to be given by the Commissioner in regard to *other lands,* and yet if the statute be given the construction that the compliance with said Article 5311 is a condition precedent to a forfeiture, then it would follow, that in order to forfeit, the Land Commissioner would have to, not only give the wide publicity and general information, provided for in the statute in regard to the land to be forfeited, but at the same time in order to forfeit this land he would have to give wide publicity and general information in regard to when *other lands* will be on the market for sale, etc. Certainly no court would give this statute such a construction.

The very evident purpose of the law is to facilitate sales of such lands by giving such advance information on lands subject to forfeiture, and other lands, for the benefit of the State and the general public; furthermore, the law plainly recognizes that these lands will

not be put on the market for sale until after forfeiture. By the terms of the law the public is notified that they will be on the market for sale if past due interest be not paid. If the interest is paid, then the land will not go on the market for sale even though the notice has been given.

Furthermore, even if the interest is not paid and the land is actually forfeited, still, under the relief act, which is found at Chapter 94, page 267 of the General Laws of the 39th Legislature, 1925; the owner of the land at the term of forfeiture had an exclusive option to repurchase under the terms of said relief act. However, relator made no effort to repurchase under this act, as before stated.

The record in this case further shows that relator's purchase was forfeited in strict compliance with the terms of Article 5326, Revised Civil Statutes of Texas, 1925, (old Article 5423) by proper notation on the wrapper, on September 22, 1925, and as provided under this Article, and by virtue of said notation and the operation of the statute, the land was immediately forfeited to the State as provided in said statute. The relator made no effort to obtain re-instatement under Article 5326, until April 29, 1926, and in the meantime there had arisen intervening rights affecting the mineral estate in favor of Theo. W. Carter on his mineral application filed with the county clerk of said county on February 11, 1926. Of course the relator would have had the right of re-instatement as provided under said last mentioned article if the rights of said mineral permittee had not intervened prior to said application for re-instatement.

In this connection it is contended by relator that since a mineral permit may, under the law, as announced in State v. Hatcher, 115 Texas, 332, mature into a sale of the mineral estate, that the provisions of Article 5311 as to giving wide publicity, etc., for the purpose of resale, apply to the intervening rights of the mineral permittee; from which it would follow under the law as announced in the case of Weaver v. Robison, 114 Texas, 272, 268 S. W., 133, that the relator might take advantage of a failure to give wide publicity, etc., prior to forfeiture. This contention is untenable. The resale reviewed in the case of Weaver v. Robison, is a resale upon competitive bidding, and has no application whatever under the Mineral Permit Law. The wide publicity and general information required by the terms of Article 5311 is plainly for the purpose of a resale of the land, and in order to obtain the best price offer under

the terms of Article 5312, whereas under Article 5341, the mineral applicant pays at a fixed statutory rate of ten cents per acre for each acre applied for. Furthermore, if there were any further doubts as to the non-application of Article 5311 to mineral permits, such doubt is absolutely removed by the fact that said article is embraced in the chapter having to do with "Surface and Timber Rights." These facts clearly exclude mineral rights, which are included under a separate and distinct chapter.

We therefore conclude that Article 5311, Revised Civil Statutes of Texas, 1925, has absolutely no application to a forfeiture of land for non-payment of interest, but that same is controlled by Article 5326, and that the relief prayed for herein by relator cannot be granted or his claim reinstated because the prior rights of Theo. W. Carter as mineral permittee have intervened.

It also now appears on the face of the record that the mineral permit issued in the name of Theo. W. Carter, on May 4, 1926, has expired by operation of law, while this suit has been pending in this court. Under this state of the record it might be contended that said mineral permit has, in fact, expired and that there is now no intervening right which would prevent the reinstatement prayed for by the relator. We do not assent to this, and further no court of equity would permit relator to profit in this manner by his own wrong.

Further, under the holdings of the Supreme Court, said court will examine a petition for mandamus, and, unless probable cause appears on the face of the petition, said court will not order a citation to issue and will dismiss the case. Hume v. Schintz, 90 Texas, 72, 36 S. W., 429. We are therefore further of the opinion that this court, in the exercise of its equity jurisdiction, will not permit the holder of the mineral permit to be deprived of his rights thereunder, by the Supreme Court itself having permitted the application for mandamus to be filed. Certainly there was no obligation on the part of the holder of the mineral permit to prosecute mining operations while the litigation is pending, and after the Supreme Court has permitted his rights under said permit to be called in question by allowing said petition for mandamus to be filed.

We therefore recommend that the mandamus prayed for by relator be in all things refused, and that the mineral permit issued to Theo. W. Carter be adjudged to be in force for the length of time after final judgment herein as it would have been in force after the date relator was permitted to file application for mandamus, had said permission to file application for mandamus not been granted.

Opinion of the Commission of Appeals is adopted and mandamus refused and mineral permit adjudged extended as recommended by the Commission.

― C. M. Cureton, Chief Justice.