HUGO FREELS v. J. H. WALKER, COMMISSIONER GENERAL
LAND OFFICE ET AL.

No. 5488.   Decided April 9, 1930.
(26 S. W., 2d Series, 627.)

E. F. Smith and *Alden, Latham and Young,* for relator.

R. J. Randolph, for intervenor, M. L. Davis.

*Robert Lee Bobbitt,* Atty. Gen. and *W. W. Caves,* Asst. Atty. Gen., for respondent.

MR. COMMISSIONER LEDDY delivered the opinion of the court.

In 1906 the state of Texas sold to Wade M. Smith, Jr., certain surveyed school land, being fractional section 92, block 1, certificate 3-546, W. & N. W. Railway Company Survey, situated in Loving county, Texas, without reesrving any mineral rights therein, the said Smith executing an obligation to the state for $559.49 for the unpaid purchase money for said section.

On August 20, 1924, the sale to Smith was forfeited for non-payment of interest.

On August 25, 1924, co-respondent James E. Bowen filed with the county clerk of Reeves county (to which Loving county was then attached for judicial purposes) an application for a mineral permit on said section 92.

On August 29, 1924, relator and K. M. Regan and James W. McElvain, the vendees of Wade M. Smith, Jr., paid to the land commissioner all past due interest and requested that the sale of section 92 to Wade M. Smith, Jr., be reinstated. Such payment was duly accepted by the land commissioner and on August 29, 1924, he made reinstatement of the sale of said section 92 to Wade M. Smith, Jr.

On September 2, 1924, the said James E. Bowen field in the general land office the application for a mineral permit that he had filed with the county clerk of Reeves county on August 25, 1924, and tendered therewith the $1 filing fee and ten cents per acre required under the mineral permit law, together with the affidavit required by such act.

On February 5, 1925, relator filed with the land commissioner his chain of title to 100 acres of said section designated as the northwest part of section 92, and the same was separated from the balance of said section, relator assuming the payment of the unpaid purchase money due the state of Texas for the 100 acres, and became obligated and bound to the state as a substitute purchaser for the 100 acres, and Wade M. Smith, Jr., was released from his obligation to the state for the unpaid purchase money due on said 100 acres in accordance with the terms of article 5329, R. S., 1925.

On September 3, 1926, the commissioner of the general land office, acting on the advice of the attorney general, cancelled and forfeited the sale to Wade M. Smith, Jr., for the alleged reason that his former reinstatement of said sale on August 29, 1924, was an error because the application of James E. Bowen filed with the county clerk on August 25, 1924, constituted an intervening right within the meaning of article 5326, R. S., 1925. At the time this order was made there was no unpaid interest due the state by relator on said 100 acres of land.

The issuance of a writ of mandamus by the Supreme Court is sought to compel the commissioner of the general land office to make such orders and entries upon his records as will show that relator is the owner of said 100 acres of land according to the records of said office.

Relator presents a state of facts which entitles him to the writ of mandamus prayed for unless the filing by Bowen of the application for a mineral permit in the office of the county clerk of itself, without being filed in the general land office, constituted such intervening right as is described in article 5326, R. S., 1925.

The right to reinstate a forfeited purchase is covered by article 5326, R. S., 1925, which provides:

"In any case where lands have been forfeited to the state for the non-payment of interest, the purchasers or their vendees may have their claims reinstated on their written request by paying into the treasury the full amount of interest due on such claims up to the time of reinstatement, *provided that no rights of third persons may have intervened.*"

Whatever right Bowen acquired by filing his application for mineral permit with the county clerk was under and by virture of the Mineral Act of 1917, p. 158. The pertinent provisions of that act are as follows:

"Section 3: One desiring to obtain the right to prospect for and develop petroleum, oil and natural gas that may be in any of the surveyed areas included herein shall file with the county clerk an application in writing giving a designation of same sufficient to identify it. The county clerk shall upon receipt of One Dollar as a filing fee, file and record the application and note the same in his record of surveys, etc."

"Section 5: When the commissioner receives an application, that was filed with the county clerk, One Dollar filing fee and Ten Cents per acre for each acre applied for * * * he shall file same, and if, upon exam-ination the application and field notes are found correct and the area applied for is within the provisions of this law, the commissioner shall issue to the applicant or his assignee a permit, etc."

A solution of the respective rights of the contending parties in this case is reached by determining what character of intervening rights the Legislature contemplated would be sufficient to prevent the land owner from availing himself of the privilege of reinstating a forfeited purchase.

The fundamental rule in construing a statute is to ascertain and give effect to the intention of the Legislature. In order to arrive at such intent it is proper to obtain light from the established policy of the state as reflected by a general course of legislation upon the subject involved. Austin v. Cahill, 99 Texas, 172, 88 S. W., 542, 89 S. W., 552; Jewell vs. Ithaca, 36 Misc. (N. Y.) 499, 73 N. Y. S., 953.

Our state government, recognizing the great importance of having its vast domain of vacant land peopled with actual settlers has, through-out all the years of its history, pursued a most liberal policy toward those

willing to undergo the hardships and privations incident to perfecting title to lands purchased from it on conditions of actual settlement. To give the statute in question the construction that the mere filing of an application for a mineral permit in the office of the county clerk operates to prevent the landowner, whose purchase has been forfeited for non-payment of interest, from reinstating his purchase would be a radical departure from the attitude of the state toward settlers upon its public lands as indicated by a general course of legislation from the very foundation of our government. It would indicate that the legislature intended to give the landowner very scant consideration as his land when forfeited one day would be effectually lost to him by the filing with the county clerk of an application for a mineral permit on the following day.

Another salutary rule of construction is that where a statute is designed to relieve from the rigors of forfeiture it should be most liberally construed to accomplish that purpose. Gulf Production Co. v. State, 231 S. W., 124.

The Legislature has not defined the character of intervening rights which it contemplated would be sufficient to prevent the reinstatement of a forfeited purchase. It is therefore the province of the courts to construe the meaning of such term and in doing so we must apply the liberal rules of construction above announced. Tested by such rules, we conclude the character of intervening right contemplated by the Legislature was a vested one, that is, a right enforceable in the courts and not a mere inchoate, imperfect or incomplete right, such as Bowen acquired by the filing of his application for a mineral permit in the office of the county clerk. Bowen had not taken such steps, prior to the reinstatement of the forfeited purchase, as placed him in position to assert that it was the duty of the land commissioner to issue to him a mineral permit on the land in question. The forfeited purchase had been reinstated before Bowen filed his application in the land office. The rule announced in the case of Huggins v. Robinson (Texas Com. App.), 10 S. W. (2d) 710, cited as authority by the respondents, cannot be applied to the facts of this case as it appears in that case the party applying for the mineral permit had filed his application in the land office and fully complied with all the requirements of the mineral act before the forfeited purchase was attempted to be reinstated. In other words, the applicant was in such position that he was entitled to a writ of mandamus to compel the commissioner of the land office to issue him a mineral permit before the reinstatement of the forfeited purchase was even applied for. Here the reinstatement had taken place before any application for the mineral permit was filed in the land office or the applicant for such permit had taken any steps beyond filing his application in the office of the county clerk.

The Legislature knew that many purchasers of state land erect permanent and valuable improvements thereon and its requirements that an

application for a mineral permit should be first filed in the office of the county clerk of the county in which the land was situated was doubtless designed to give the owners of land which may have been forfeited such notice as would be afforded thereby in order that he might take prompt action to prevent the loss of his right of reinstatement.

We think this case more nearly falls within the rule announced in Anderson v. Neighbors, 94 Texas, 236, 59 S. W., 543-544. Land sold to Anderson was forfeited in 1898 for non-payment of interest. On the 14th day of February, 1899, Neighbors was awarded, under his application, a grazing lease on the land. On March 4th, 1899, the land commissioner received a request from Anderson, the owner of the land, for reinstatement. At the time of the receipt of this application the grazing lease to Neighbors, while awarded, had not been actually signed and delivered by the commissioner, but the applicant had fully complied with all legal requirements to obtain such lease. Notwithstanding this fact the Supreme Court held that Anderson was entitled to have his forfeited purchase reinstated. In discussing the question Justice Brown said:

"The Legislature, by the proviso 'that no rights of third persons may have intervened,' intended to expressly give the protection which the Constitution afforded to vested rights. Section 17 of the same act of the Legislature of 1897, which appears in Batts' Digest as article 4218r, authorized the leasing of the public school lands under certain circumstances and prescribed rules to govern the Commissioner in making such leases. The last sentence in that article reads thus: 'All bids and offers to lease may be rejected by him (the Commissioner) prior to signing the lease contract, for fraud or collusion, or other good and sufficient cause.' At the time Mrs. Anderson's request to be allowed to redeem the land was received in the office, the lease had not been signed and delivered by the Commissioner. Under the provisions last quoted from the statute, the Commissioner of the General Land Office was invested with the discretion to withhold the lease at any time before signing and delivering the same for any cause which he might deem sufficient, and certainly the notice by Mrs. Anderson and the fact that she was occupying the property as a home would have been ample cause for refusing to sign the lease. It follows, then, that at the time Mrs. Anderson's request was received, Neighbors, had not acquired such a vested right as would have entitled him to enforce the lease contract by a proceeding in the court, for which reason it must be held that the rights of a third person had not intervened at the time the request was received."

It is true, as contended by respondents, that the act authorizing the commissioner of the land office to execute grazing leases vested in him the discretion to reject a lease for fraud, connivance or other good and sufficient cause. However, under the mineral act the commissioner is authorized to promulgate such rules and regulations as are necessary for the

execution of the purposes of the act and he is directed when such application is filed in his office to examine the same "and if upon examination the *application* and field notes *are found correct* and the area applied for is within the provisions of this law, he shall issue to the applicant a permit," etc. Under such provision the commissioner would have the authority to reject an application for no other reason than a failure to conform to the rules and regulations prescribed by him. It cannot, therefore, be said that the commissioner is wholly without discretion in passing upon an application for a mineral permit. Moreover, the commissioner is authorized to reject an application for a mineral permit if the affidavit executed by the applicant, or the records of the land office, disclose that the applicant is ineligible to obtain a permit under the terms of article 5339. If it appears that the applicant has in good standing on the records of the land office a mineral permit for four sections, or the equivalent, eligible to be embraced in one permit, or has a permit covering more than 1,000 acres within one mile of a producing well, then in either event it is the duty of the commissioner to determine the applicant ineligible and reject his application.

It was evidently not the purpose of the Legislature in enacting the mineral act to bring confusion into the administration of the laws regulating the sale of school land. Where a law is enacted as a part of an existing system covering a given subject matter, it will be presumed the Legislature intended that the same should operate in harmony therewith. To hold it was contemplated that the filing of an application for a mineral permit in the office of the county clerk constituted such an intervening right as would prevent reinstatement of land, the sale of which had been forfeited for non-payment of interest, would involve endless confusion in the administration of the statutes regulating the reinstatement of forfeited sales of public lands. The land commissioner would be compelled to go outside the records of his own office in order to determine whether he could lawfully reinstate such sales. It would be necessary for him to ascertain whether an application for a mineral permit was filed in the county in which the land was situated and if he found such application had been filed, he would be compelled to delay action thereon until the expiration of thirty days from the date of the filing of such application in order to ascertain whether the applicant intended to follow up such application by filing the same in the land office and complying with other requirements of the mineral act.

It is very significant indeed that no provision is found in the mineral act requiring the county clerk to notify the land commissioner when an application for a mineral permit is filed in his office. If the Legislature intended that the filing of such application should constitute an intervening right which would leave the commissioner of the land office without authority to reinstate a forfeited purchase sought to be covered by the

permit applied for, undoubtedly some provision would have been made for the commissioner to be notified of such fact. In the absence of such provision when an application is made to the commissioner for reinstatement of a forfeited purchase, it would be necessary for him to communicate with the county clerk of the county in which the land was situated for the purpose of ascertaining whether an application for a mineral permit had been filed covering the land sought to be reinstated. Upon receiving information that no such application had been filed, it would be his duty to grant the owner's request for a reinstatement. He might later ascertain that between the time of the mailing of the information by the county clerk and its receipt by him a file for a mineral permit had been made, in the county where the land was situated, which would necessitate the setting aside of the reinstatement and delaying further action thereon until it could be determined whether the application for such permit would be completed.

It is plain that if we give this statute the construction contended for by respondents it would operate to cause frequent delays to owners desiring to reinstate forfeited land and would result in much confusion because of the commissioner being required to go outside of his own records in order to determine whether he might legally grant a land owner's request for reinstatement. It should be presumed that the Legislature in enacting the mineral act did not intend to bring about such confusion in the administration of existing laws regulating the sale of the state's public lands. In other words, the act should be so construed that its operation will harmonize with existing laws unless a contrary intention is clearly manifested by its provisions. We find nothing in the act indicating such an intention.

The reinstatement of the land in question by the commissioner on August 29, 1924, being prior to any intervening right acquired by respondent Bowen, was in all things valid; hence the commissioner was without authority to set such reinstatement aside and his attempt on September 3, 1926, to do so was void.

The conclusion we have reached requires a denial of the prayer of intervenor, M. L. Davis, for a mandamus compelling the land commissioner to grant him a mineral permit to the land in controversy as his right thereto is predicated upon the filing of Bowen's application in the office of the county clerk constituting such an intervening right as prevented relator from obtaining a reinstatement of the forfeited sale.

We recommend that the writ of mandamus prayed for by relator be awarded and the prayer of the intervenor be denied.

The opinion of the Commission of Appeals is adopted, and mandamus awarded to relator, and petition of intervenor denied.

C. M. Cureton, Chief Justice.