**The STATE of Texas, Appellant,**

v.

**ACEL DELIVERY SERVICE, INC.,
Appellee.**

No. 16349.

Court of Civil Appeals of Texas.

Dallas.

May 29, 1964.

Rehearing Denied July 10, 1964.

Waggoner Carr, Atty. Gen., and Norman V. Suarez and Sam Kelley, Asst. Attys. Gen., Austin, for appellant.

Phinney, Hallman & Pulley, Dallas, for appellee.

C. S. Ludwick, doing business as Republic Truck Line, Cliff Delivery Service, Co-operative Delivery Service, Direct Delivery Service, Lovedale Cartage Co., P & M Delivery Service and Texas Delivery Service, Inc., amici curiae.

DIXON, Chief Justice.

The State of Texas has appealed from an adverse judgment in its suit against appellee Acel Delivery Service, Inc., in which suit the State sought to collect penalties and to obtain an injunction because of the alleged violation by appellee of the Texas Motor Carrier Act—in particular Arts. 911b, Vernon's Ann.Civ.St. and 1690b, Vernon's Penal Code. In addition to briefs filed by appellant and appellee *amicus curiae* briefs have been filed supporting and attacking the trial court's judgment.

The issue, as appellant puts it, "is whether motor carrier operations for hire between contiguous incorporated cities, towns and villages are subject to the Texas Railroad Commission, even though in the course of the journey from one city to another no unincorporated areas are traversed."

So far as intrastate traffic is concerned appellant would have us interpret the Texas Motor Carrier Act to authorize the Railroad Commission of Texas to regulate the transportation of property for hire over any public highway in the state with only two exceptions: (1) the Commission would not be authorized to regulate operations exclusively within the limits of an incorporated city, town or village; (2) nor would the Commission be authorized to regulate operations from an incorporated city, town or village to a rural area where such operation does not pass into or through another incorporated city, town or village.

## FACTS

The material facts have been stipulated. Acel Delivery Service, Inc. has its principal office and place of business in Irving, Dallas County, Texas.

We believe it well to quote a portion of Section III of the stipulations:

"The Defendant has been operating between Dallas and incorporated cities and towns adjacent and contiguous to the City of Dallas and to each other, performing a strictly local service between such contiguous communities as well as what might be termed a local pick-up and delivery service, both picking up and delivering freight for hire. The communities in which it operates include the cities of Dallas, Grand Prairie, Irving, Mesquite, Garland, Farmers Branch, University Park, Highland Park, Richardson, all of which are incorporated municipalities whose boundaries are contiguous to Dallas, as well as Carrollton, which is contiguous to Farmers Branch, and Arlington, which is contiguous to Grand Prairie, and Fort Worth, which is contiguous to Arlington.

"Heretofore, on three separate days, Defendant transported drugs for Schering Corp. for compensation or hire between incorporated cities, towns and villages whose city limits are contiguous without having obtained either a Certificate of Public Convenience and Necessity or a permit from the Railroad Commission of Texas to transport such commodities. In the performance of said transportation, Defendant did not at any time traverse a highway which is not included within the corporate limits of an incorporated city or town."

More specifically appellee transported for hire drugs for Schering Corp. (1) from Dallas, Texas to a drug store in University Park, Texas, a city which is completely surrounded by the City of Dallas; (2) from Dallas, Texas to Garland, Texas, a city whose city limits are contiguous to Dallas; and (3) from Dallas, Texas, through Grand Prairie, Texas, whose limits are contiguous to the limits of Dallas, through Arlington, Texas whose city limits

are contiguous to the limits of Grand Prairie, Texas, but not to Dallas, Texas, to Fort Worth, Texas, whose city limits are contiguous to the limits of Arlington, Texas, but not to Grand Prairie, Texas or Dallas, Texas. All the cities involved are in Dallas County except Arlington and Fort Worth, which are in Tarrant County.

We quote a part of Section V of the stipulations:

"Until about 1953, only the Cities of Highland Park and University Park were contiguous to the City of Dallas. In 1954, other towns began to grow until their boundaries were contiguous with those of the City of Dallas, so that at present the boundaries of Grand Prairie, Irving, Mesquite, Garland, Farmers Branch, University Park, Highland Park and Richardson, all of which are incorporated municipalities, are contiguous to Dallas, and the boundaries of the City of Carrollton are contiguous to Farmers Branch, and the boundaries of the City of Arlington are contiguous to the City of Grand Prairie, Texas, and the boundaries of Fort Worth are contiguous to the City of Arlington. From about 1954 until about 1956 local delivery service carriers were permitted to travel from town to town in Dallas County if the city limits of the towns touched anywhere regardless of whether the actual route they traveled was partly on a public highway. This was in accordance with the interpretation expressed in a letter written by Bryan Bell, Director, Motor Transportation Division, Railroad Commission of Texas. About 1956, following a conference in Austin, Chief Odom of the Department of Public Safety, directed Captain Law, License and Weight Captain of Region, of the Department of Public Safety, Dallas, to enforce the Texas Motor Carrier Act, Article 911b, Vernon's Annotated Civil Statutes, and Article 1690b, Texas Penal Code, as to carriers going from Dallas to other cities unless the carriers were always actually within the city limits of one of the contiguous cities. The law was enforced in that manner until December 20, 1957, when the Attorney General of Texas issued an opinion to the effect that a carrier is subject to The Texas Motor Carrier Act if he travels from *one* incorporated town to another even if he does not travel any open road or highway between towns."

We quote a portion of Section VII of the stipulations:

"It is further stipulated and agreed that Mr. Bryan Bell of Austin, Travis County, Texas, if called to the witness stand, would testify as follows:

"That his name is Bryan Bell and that he was the Director of the Motor Transportation Division of the Railroad Commission at Austin, Texas, from July, 1945, until October, 1960. That prior to his appointment as Director of the Motor Transportation Division, he was the insurance expert in the Motor Transportation Division of the Railroad Commission. That from the time of his appointment as Director of the Motor Transportation Division of the Railroad Commission, he had been instructed orally by the Railroad Commission of Texas to advise any interested party that if the operations of a motor carrier for hire were conducted within the city limits of cities, towns or villages that were contiguous, it was the oral opinion of the Railroad Commission of Texas that no authority was required to be secured from the Railroad Commission of Texas to conduct such operations, and that the Railroad Commission of Texas disclaimed any jurisdiction over operations conducted between cities, towns and villages whose city limits were contiguous to one another.

"Mr. Bell would further testify that based upon his personal knowledge of the records of the Railroad Commis-

sion since the date of his employment, the Railroad Commission of Texas has given the same interpretation to the provisions of the Texas Motor Carrier Act, Article 911b, V.A.C.S., Section 1(g) from the time of its passage in 1931 and did not regulate transportation between cities, towns and villages whose city limits are contiguous. On December 20, 1957, an Attorney General's opinion was issued expressing the opinion that such transportation was within the terms of Article 911b, V.A.C.S.

"Subsequent to the opinion of the Attorney General on December 20, 1957, that such transportation is subject to the certificate provisions of Article 911b, several carriers have applied for and been granted Certificates of Public Convenience and Necessity authorizing operations within the incorporated limits of contiguous cities and towns and no appeal has been taken from any of such orders. There are many other carriers, including plaintiff, who have not sought such authority but have continued to operate within the incorporated limits of cities and towns contiguous to each other."

From time to time beginning June 21, 1955 the Railroad Commission of Texas has promulgated orders, nine in number, setting rates for transportation of vegetables, pulpboard, cans, noi, can tops, perlite, paper articles and sodium hypochlorite solution from various towns to certain specified points, some of which are those named herein. Several orders were also promulgated extending terminal areas specified in previous orders. The last of these orders was promulgated October 24, 1961.

## OPINION

In three points on appeal appellant contends that the trial court erred (1) in holding that appellee's vehicles, operated wholly within the incorporated limits of contiguous cities or towns, are not subject to the regulatory provisions of Art. 911b, V.A.C.S., and (2) in holding that appellee has a full right and legal authority, without a certificate of public convenience and necessity from the Railroad Commission, to continue its business of transporting freight by motor vehicle for hire from one incorporated city, town or village to another incorporated city, town or village where such municipalities are contiguous; and (3) in denying appellant's prayer for penalties and refusing to issue a writ of injunction restraining appellee from further violation of the Motor Carrier Act as prayed.

■ We have concluded that all three of appellant's points should be overruled and the judgment of the trial court should be affirmed.

Art. 911b, Sec. 1(g), V.A.C.S. which we are called on to interpret, is as follows:

"(g) The term 'motor carrier' means any person, firm, corporation, company, co-partnership, association or joint stock association, and their lessees, receivers or trustees appointed by any Court whatsoever owning, controlling, managing, operating or causing to be operated any motor-propelled vehicle used in transporting property for compensation or hire over any public highway in this State, where in the course of such transportation a highway between two or more incorporated cities, towns or villages is traversed; provided, that the term 'motor carrier' as used in this Act shall not include, and this Act shall not apply to motor vehicles operated exclusively within the incorporated limits of cities or towns."

■ In our opinion the language of Section 1(g) itself lends support to our holding. The first part refers to transportation where "a highway *between* two or more incorporated cities, towns or villages is traversed; * * *." The word "between" as used in the above statute seems to us to

mean and require an intervening space between cities. Black's Law Dictionary (1951), p. 203. The word "between" as here used does not seem to us to be in any way similar to the word "contiguous", or the word "continuous".

In Texas Turnpike Authority v. Sheppard, 154 Tex. 357, 279 S.W.2d 302, 307 our Supreme Court did not have before it the question which is now before us. In the above case it was held that the word "between" as used in the Act creating the Turnpike Authority, Art. 6674, V.A.C.S., is not used in an exclusionary sense, but the word rather designates the termini of the route. However, the Supreme Court did say the word "between" "usually denotes an intervening space or distance between two objects and has the effect of excluding the boundaries." It is the latter meaning which we believe the Legislature intended in this case.

To make doubly sure of its intention the Legislature included a proviso clause in Section 1(g) of the Act. This clause expressly provides that the term "common carrier" shall not apply to "motor vehicles operated exclusively within the incorporated limits of cities or towns." The statute uses the plural, *"cities or towns"*—it does not say within the corporate limits of "a city or town."

We think our interpretation of Section 1(g) is consistent with the provisions of the Motor Carrier Act as a whole and with the provisions of other statutes. The Act, as appellant admits, does not attempt to give the Railroad Commission regulatory powers over transportation moving from an incorporated city over a highway into an unincorporated rural area "where such service does not pass into or through another incorporated city or town." But if we were to accept appellant's whole interpretation, the Railroad Commission would take over exclusive control of such transportation the minute the unincorporated area should change and become an incorporated municipality contiguous to its incorporated neighbor. We do not believe the Legislature had any such intention.

Sec. 10 of Art. 911b requires an applicant for a certificate of convenience and necessity to accompany his application with a map delineating the complete route or routes over which the applicant desires to operate, together with the description of each vehicle which the applicant intends to use. Also there must be included a proposed schedule of service and of rates to be charged. The Railroad Commission, if it grants the application, may then prescribe routes, rates, etc. for the applicant. Thus if a department store in Dallas, Texas chose to employ a local delivery service to deliver merchandise to a residence in University Park, Texas such local delivery service would be subject to the above regulations, though the City of University Park is entirely surrounded by the City of Dallas.

We call attention also to other statutes which give Home Rule Cities exclusive power and dominion over the public highways within their boundaries. Art. 1175, Secs. 12, 16, 20 and 21, V.A.C.S. General Law Cities are given exclusive control over their streets. Art. 1016, V.A.C.S. Under these statutes a vehicle transporting property for hire from Dallas to Highland Park, or any other contiguous city, is under the exclusive control of the City of Dallas, as long as it is in the City of Dallas and under the exclusive control of the City of Highland Park or any other contiguous city after it enters into the confines of Highland Park, or some other contiguous city.

■ If we were to give Art. 911b, Sec. 1(g) the interpretation for which appellant contends we would raise a conflict between Art. 911b, Sec. 1(g), V.A.C.S. and Arts. 1175 and 1016, V.A.C.S. above cited. It is a well established rule that as between two possible interpretations, one of which would raise a conflict between statutes while the other interpretation would harmonize and reconcile the statutes, the latter interpreta-

tion should be accepted. Freels v. Walker, 120 Tex. 291, 26 S.W.2d 627; Town of Griffing Park v. City of Port Arthur, Tex. Civ.App., 36 S.W.2d 593, 596; Dallas Railway & Terminal Co. v. Strickland Transp. Co., Tex.Civ.App., 225 S.W.2d 901, 905. The Legislature plainly sought to avoid any such conflict, for in Art. 911b, Sec. 2 it is expressly provided as follows:

"* * * provided, however, that nothing in this Act or any provision thereof shall be construed or held to in any manner affect, limit or deprive cities and towns from exercising any of the powers granted them by Chapter 147, Pages 307 to 318, inclusive of the General Laws of the State of Texas, passed by the 33rd Legislature, or any amendments thereto."

Appellee and certain *amicus curiae* contend that the Railroad Commission for many years has acquiesced in the interpretation which the trial court has given to Art. 911b, Sec. 1(g) in this case. In support of this contention they cite the statement of Bryan Bell, formerly Director of the Motor Transport Division of the Railroad Commission; and they point out also that for a long time there was no attempt to enforce the Motor Carrier Act as appellant would construe it.

On the other hand appellant and certain *amicus curiae* contend that Bell's oral orders are not official and that there has never been any official recognition of appellee's contentions. In support of their view they call attention to the nine instances when application for certificates of convenience and necessity have been granted by the Commission. Appellant and *amicus curiae* also rely on the rule that mere failure to enforce a law does not relinquish the right or the duty to enforce it when violations are brought to the attention of the public officials charged with the duty of enforcement.

We do not base our holding here on the alleged interpretation which appellee says the Railroad Commission over the years

has given to the Texas Motor Carrier Act with reference to the issue presented on this appeal. The most we can say in that regard is that the Railroad Commission has apparently not been certain as to the proper interpretation. We base our holdings on the other grounds which we have set out in this opinion.

Appellant's points on appeal are overruled.

The judgment of the trial court is affirmed.

Affirmed.