

# THE ATTORNEY GENERAL

## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

January 21, 1969

Honorable Preston Smith
Governor of Texas
State Capitol Building
Austin, Texas

Opinion No. M-333

Re: Whether the Board of Directors of Texas Technological College may create a medical school as a part of the existing college at Lubbock without the passage of implementing legislation?

Dear Governor Smith:

Your recent letter requests the Attorney General to render an opinion on the above question.

The Legislature of the State of Texas created Texas Technological College at Lubbock in 1923. Article 2629, et seq., Vernon's Civil Statutes. An examination of these articles reveals that Article 2629 sets out the purpose for which Texas Technological College was created. It reads as follows:

> " The Texas Technological College at Lubbock shall be a co-educational college giving thorough instruction in technology and textile engineering from which a student may reach the highest degree of education along the lines of manufacturing cotton, wool, leather and textile engineering, the chemistry of materials and technique of weaving, dyeing, tanning and the doing of any and all other things necessary for the manufacturing of raw materials into finished products; and said college shall also have complete courses in the arts and sciences, physical, social, political, pure and applied, such as are taught in colleges of the first class, leading to the degrees of bachelor of science, bachelor of arts, bachelor of literature, bachelor of technology and any and all other degrees given by colleges of the first class; said college being designed to elevate the ideas, enrich the lives

> and increase the capacity of the people
> for the democratic self-government, and
> particularly to give instruction in techno-
> logy, manufacturing and agricultural pur-
> suits, domestic husbandry and home econo-
> mics so that the boys and girls of this
> State may attain their highest usefulness
> and greatest happiness and in so doing,
> may prepare themselves for producing from
> the State its greatest possible wealth."
> (Emphasis supplied)

Further, Article 2631 sets out the courses which are author-
ized to be taught. It provides:

> " In addition to the courses provided in
> technology and textile engineering, said
> college shall offer the usual college
> courses given in standard senior colleges
> of the first class and shall be empowered
> to confer appropriate degrees to be deter-
> mined by the board of directors, and shall
> offer four year courses, two year courses,
> or short term courses in farm and ranch
> husbandry and economics and the chemistry
> of soils and the adaption of farm crops to
> the peculiar soil, climate and condition
> of that portion of the State in which the
> college is located and such other courses
> and degrees as the board of directors may
> see fit to provide as a means of supplying
> the educational facilities necessary for
> this section of the State. The board shall
> furnish such assistance to the faculty and
> students of said college as will enable
> them to do original research work and to
> apply the latest and most approved method
> of manufacturing and, in general, to afford
> the facilities of the college for the pur-
> pose of originating, developing, supporting
> and maintaining all of those agencies for
> the development of the physical, mental and
> moral welfare of the students who attend
> the college and for further purpose of de-
> veloping the material resources of the
> State to their highest point of value and
> usefulness by teaching the arts of commerce
> and manufacturing. All male students

> attending this college shall be required to
> receive such instruction in military science
> and tactics as the board of directors may
> prescribe which shall at all times, comply
> in full with the requirements of the United
> States Government now given as a prerequisite
> to any aid now extended or hereafter to be
> extended by the Government of the United
> States to State institutions of this character
> and all such white male students shall, during
> their attendance at such college, be sub-
> ject to such military discipline and control
> as the board of directors may prescribe."
> (Emphasis supplied)

In this connection, the Board of Directors consists of nine directors pursuant to the authority of Article 2630, in which Board is vested the government, control and direction of the college.

The first inquiry shall be directed to the question of whether the Board of Directors has authority in the first instance from these pertinent statutes to create a medical school without implementing Legislation, a question to be resolved aside from limitations which may have been later placed on the Board of Directors by enactments of the Legislature. Such an inquiry must of necessity begin with a determination of the overriding pur- pose for the creation of Texas Technological College. In as- certaining such, certain rules of construction pertaining to statutes must be constantly borne in mind. The first endeavor is to ascertain the legislative intent. Lacey v. State Banking Board, 118 Tex. 91, 11 S.W. 2d 496 (1928). Such an ascertainment is to come from a general view of the entire enactment. Barber v. Giles, 146 Tex. 401, 208 S.W. 2d 553 (1948). Once the intent of the legislature has been established, the next objective is to construe the statute so as to give effect to the purpose of the Legislature, Houston v. Allred 123 Tex. 334, 71 S.W. 2d 251 (1934). In this regard, statutory provisions are to be liberally construed to carry out the purpose intended by the Legislature. Freels v. Walker, 120 Tex. 291, 26 S.W. 2d 627 (1930), Galveston, H. and S.A.R. Co. v. Enderle, 170 S.W. 276 (Tex. Civ. App. 1914, error ref.), Austin v. Collins, 200 S.W. 2d 666 (Tex. Civ. App. 1947, error ref. n.r.e.), 53 Tex. Jur. 2d 298, Statutes, Section 194.

Looking to these statutes and applying the above rules, the conclusion must be reached that the Legislature must have intended something more than, and in addition to, a mere "technological college".

From the emphasized portions of the statute set out in full above there is gleaned the pervasive idea that the Legislature created what was to be a "college of the first class" by offering the same degrees as such a college. The Legislature recognized that in addition to the courses specifically provided for technology and textile engineering, the college should offer all courses given in standard senior colleges of the first class. Further, it specifically provided explicit power to the Board of Directors to provide for such other courses and degrees as the Board of Directors might see fit, and to this end the Board evidently was empowered to act without the need for implementing legislation.

It would appear to be without merit to contend that because the statute speaks in terms of "college" that there is no authority to create a school of medicine, since such schools are foreign to what is envisioned as a four year college and are peculiar only to universities. In addition to the statute dispelling such a contention, the definition of "college" itself would likewise do so, for in State v. Erickson, 75 Mont. 429, 244 P. 287, 291 (1926), it is found that the word "college" is applied to all kinds of institutions from universities to business colleges, barber colleges and others. More importantly, Texas Technological College was designated by the Coordinating Board on April 18, 1966, to be a university. It could hardly be argued with that throughout Texas and throughout the United States, higher education views the term "university" as descriptive of multi-purpose institutions offering instruction in a variety of disciplines, awarding degrees of all levels, and especially the doctorate, and organized into a number of components whether they be called schools, colleges, departments or divisions.

As to whether or not Texas Technological College can create a medical school within the confines of the authority granted in the above statutes without implementing legislation is answered additionally by the experience of the college itself during the years it has existed. Today, it is made up of the following components, none of which were created by implementing legislation: the School of Agriculture, the School of Arts and Sciences, the School of Business Administration, the School of Engineering, the School of Home Economics, the School of Law, the Graduate School, and the Division of Extension. For years various departments have awarded the Doctor of Philosophy degree after completion of the work required. These departments include biology, chemistry, chemical engineering, civil engineering, electrical engineering, English, geosciences, government, history, industrial engineering, mechanical engineering, physics, and psychology.

Thus it is seen that using settled rules of law, a construction of the statutes creating Texas Technological College leads one to the conclusion that the Legislature desired a "college of the first class," and by empowering the Board of Directors to act to accomplish that purpose the further conclusion is reached that the creation of a medical school by the Board of Directors would be an accomplishment calculated to satisfy the intent and desire of the Legislature when it gave birth to Texas Technological College by the above statutes. The creation of a medical school would be, as demonstrated above, entirely consonant with its experience of operating under these statutes from its inception. It certainly cannot be said that it would be a deviation from the purpose of the statute.

Having concluded that by the above statutes, the Board of Directors can create a medical school without implementing legislation, the further inquiry remains as to whether the Higher Education Coordinating Act of 1965, Vernon's Civil Statutes, Article 2919e-2, modifies or limits the power residing in the Board of Directors to create a medical school without resort to enabling legislation.

Texas Technological College, being one of the many institutions in Texas which is supported by appropriations from the Legislature of the State of Texas is subject to all of the provisions of the Higher Education Coordinating Act of 1965. This Act creates a Coordinating Board, Texas College and University System and outlines specifically the powers and duties of the Coordinating Board, such Coordinating Board being the successor agency to the previous Texas Commission on Higher Education.

The applicable portions of Article 2919e-2, Vernon's Civil Statutes include Section 2 (e) which provides as follows:

> "'Medical and dental unit' means The University of Texas Medical Branch; Southwestern Medical School;  South Texas Medical School; The University of Texas Dental Branch; M.D. Anderson Hospital and Tumor Institute; Graduate School of Biomedical Sciences at Houston; and such other medical or dental schools as may be established by statute or as provided in this Act." (Emphasis supplied)

In Section 2 (g) the following definition is found:

> "'Institution of higher education'" means any

> public junior college, public senior college or university, medical or dental unit or other agency of higher education as herein defined."

Section 2 (j) of Article 2919e-2 reads:

> "'Degree program' means any grouping of the subject matter courses which, when satisfactorily completed by a student, will entitle him to a degree from a public senior college or university or a medical or dental unit."

Section 3 of the Act provides:

> " There is hereby established the Coordinating Board, Texas College and University System which shall have its office in Austin, Texas. It shall perform only such functions as are herein enumerated and as the Legislature may assign to it. Functions vested in the governing boards of the respective institutions of higher education, not specifically delegated to the Board, shall be performed by such boards. The coordinating functions and other duties delegated to the Board in this Act shall apply to all public institutions of higher education."

There is found in Section 10 (6) that the Board representing the highest authority in the State in matters of public higher education shall:

> " Order the initiation, consolidation or elimination of degree or certificate programs where such action is in the best interest of the institutions themselves or the general requirements of the State of Texas, or when such action offers hope of achieving excellence by a concentration of available resources. No new department, school, degree program, or certificate program shall be added at any institution of higher education after the effective date of this Act, except with specific prior approval of the Board." (Emphasis supplied)

Section 13 of the Act provides:

"No funds appropriated to any institution
of higher education shall be expended for
any program which has been disapproved by
the Board, unless said program is subse-
quently specifically approved by the Legis-
lature. No new department, school or degree
or certificate program approved by the Board
or its predecessor, the Texas Commission on
Higher Education, shall be initiated by any
institution of higher education after the
effective date of this Act until the Board
shall make a written finding that the de-
partment, school or degree or certificate
program is adequately financed by legis-
lative appropriation, by funds allocated
by the Board, and/or by funds from other
sources. Any proposed statute which would
establish an additional institution of
higher education except a public junior
college shall be submitted, either prior
to introduction or by the standing committee
considering same, to the Board for its
opinion as to need of the State therefor, and
the Board shall report its findings to the
Governor and the Legislature, provided that
a recommendation that an additional insti-
tution is needed shall require the favorable
vote of at least two-thirds (2/3) of the
members of the Board. But a recommendation
of the Board shall not be considered a con-
dition to the introduction or passage of
any proposed statute." (Emphasis supplied)

The legislative intention regarding medical schools is
initially discerned from Section 2 (e) of the Act as quoted above.
Since it states ". . .and other such medical or dental schools
as may be established by statute or as provided in this Act,"
(emphasis supplied), it becomes clear that the creation of medical
schools through some means other than implementing legislation
was contemplated by the Legislature. Further analysis then shows
that in Section 10 (6), the specific authority was granted the
Coordinating Board to establish other medical schools than those
now in existence. Finally, looking to the last sentence of Section
10 (6), it is readily discerned that implicit in the entire section
is the idea that a new department or degree program (which by def-
inition includes medical school) can be created without implementing
legislation so long as prior approval of the Board is obtained.

There is nothing in the section about the need of special legislation, and such a construction renders Section 10 (6) consistent with Section 2 (e) and gives meaning to both sections, a desired objective. The most that can be said by way of summary is that the Legislature granted and recognized this power in the Coordinating Board while at the same time it did not relinquish its own right to establish such schools by implementing legislation if it so desired.

Section 13 of Article 2919e-2 has as its main thrust the insuring that any ". . .new department, school or degree or certificate program. . ." will not be initiated without the Coordinating Board having exercised the functions for which it was set up. The second sentence of Section 13 speaks of "no new department, school or degree. . .program" being ". . .initiated by any institution of higher education. . ." (emphasis supplied) until it is found to be adequately financed through legislative appropriation or otherwise. Implicitly, at the very least, is the expression of the idea that a medical school can be created without the need for implementing legislation, for if implementing legislation is required, one could rationally assume that the Legislature itself would ensure its adequate financing such that its own action would not be rendered nugatory. It is not to be presumed that the Legislature would destroy at birth its own enactment. Port Acres v. Port Arthur, 340 S.W. 2d 324 (Tex. Civ. App. 1960, error ref. n.r.e.) This view is buttressed by the fact that when Section 13 of the statute speaks in terms of a "proposed statute," it does not appear until the third sentence of Section 13 and then speaks of the only function of the Board as being the rendering of an opinion as to the "need" of the State for such proposed legislation, thus merely re-emphasizing that the creation of a medical school can be done by implementing legislation and if such a route is chosen, the role the Board is to play. If, as a prerequisite to the establishment of a new department or degree program, there must first be obtained the specific prior approval of the Coordinating Board, pursuant to Section 10 (6), and yet in Section 13 we find that a recommendation of the Coordinating Board shall not be considered a prerequisite to the passage of a proposed statute establishing an institution of higher education (which includes a medical school), is it not reasonable to assume that in one instance the statute is speaking of the creation of a medical school without implementing legislation and in the other instance is speaking of the creation of a medical school with implementing legislation? Otherwise, what the Legislature said in Section 10 (6) would be rendered ineffective by what it sets out in the last sentence of Section 13. It is to be preferred that a construction be given the two portions of the enactment which renders both viable rather than a construction which would create a conflict.

The above construction then harmonizes Section 13 and Section 10 (6) with the indication noted in Section 2 (e) of Article 2919e-2, and thus comports with the established and cardinal rule of construction that "all the language and every part of a statute shall be given effect, if reasonably possible" and ". . .effect and meaning should be given to each and every sentence, clause, phrase, and word of the Act, as nearly as can be done consistently with the object and purpose of the legislature." 53 Tex. Jur. 2d 228, Statutes, Section 159.

Such an analysis can only point to the conclusion that the Higher Education Coordinating Act of 1965 presents no impediment to the creation of a medical school at Texas Technological College at Lubbock without implementing legislation. It should be pointed out that according to information furnished this office, the requirements of the Act are being met, for on December 3, 1968, the Coordinating Board, meeting in Austin, received a report from a Coordinating Board Special Committee which recognized the necessity for a medical school to serve the special needs of West Texas, and thereafter, at a meeting of the Coordinating Board on January 9, 1969, authorized Texas Technological College to request funds from the Legislature for the orderly planning and development of an innovative medical school on the campus of Texas Technological College at Lubbock. The Coordinating Board further stated that the medical school could be commenced as soon as facilities and programs are judged to be adequate by the Coordinating Board and full financing provided by the Legislature.

Although the Legislature did attempt to pass a bill for establishing a medical department as shown by the fact that in 1965 the 59th Legislature enacted House Bill No. 14 (authorizing the Board of Directors of Texas Technological College to establish a medical department of the College), this enactment was subsequently vetoed by the Governor and thus did not become effective. No further attempt has been made since that time by the Legislature to pass such legislation. As shown by the discussion of the statutes creating Texas Technological College, such a method of creating a medical school was certainly available although not mandatory. Likewise, the Higher Education Coordinating Act of 1965, as demonstrated above, recognizes that this is an alternative to the procedures to be complied with under the various mandates establishing the Coordinating Board. The veto message of the Bill (House Journal, Texas House of Representatives, April 13, 1965, pages 1138-1143) signed by Governor Connally lists no legal objection to the creation of the medical school under discussion without implementing legislation, nor does it even insinuate that the only method of creating such would be through legislative action.

Indeed, the thrust of the veto message was that the legislation was simply premature, and the requisite findings to his mind had not been made. He states on page 1138 that House Bill No. 14 would authorize the establishment of a medical department by the Board of Directors of Texas Technological College prior to the completion of any professional study as to medical needs of the State, and that this would be contrary to sound planning of such graduate programs. Such an objection is, of course, now met since the Coordinating Board has authorized Texas Technological to request funds for a medical school.

We therefore find that the Board of Directors of Texas Technological College may create a medical school as part of the existing college at Lubbock without the passage of implementing legislation after full compliance with the Higher Education Coordinating Act of 1965. It is to be recognized, however, that although no implementing legislation is required, the Legislature by virtue of its power over appropriations has, in the final analysis, the power to accept or reject this method of creating a medical school by Texas Technological College.

### S U M M A R Y

The Board of Directors of Texas Technological College may create a medical school as a part of the existing college at Lubbock without the passage of implementing legislation through compliance with Article 2629, 2631, and 2919e-2, Vernon's Civil Statutes.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Robert C. Crouch
Assistant Attorney General

APPROVED :
OPINION COMMITTEE

Kerns Taylor, Chairman
George Kelton, Vice-Chairman
John Banks
Rick Fisher
Neil Williams
Mark White

W.V. GEPPERT
Staff Legal Assistant